A. B. v. C. D.

Civ. A. No. 880.

District Court, E. D. Pennsylvania.

Dec. 6, 1940.

S. G. Wagner and Wagner & Wagner, all of Pittsburgh, Pa., and David L. Ullman, of Philadelphia, Pa., for plaintiff.

T. R. White and White & Staples, all of Philadelphia, Pa., for defendant.

BARD, District Judge.

This action was instituted at law allegedly to recover damages averred to have been sustained as a consequence of the defendant's fraudulent promise to marry the plaintiff.

According to the complaint, the defendant wilfully and knowingly made false and fraudulent representations and promises of marriage to the plaintiff. As a result, the plaintiff, a resident of New York, agreed to marry the defendant, a resident of Pennsylvania. This was in the latter part of 1935. The complaint further alleges that the defendant then deferred the nuptials for nearly three years, at various times and on various pretexts, before finally declaring at the plaintiff's home that it was not and had never been his intention to marry the plaintiff.

During the "engagement" period, the plaintiff allegedly made gifts to the defendant and expended large sums of money, in contemplation of the supposedly impending marriage, for travel, clothing and otherwise. The expenditures were out of proportion to her custom. In addition to the monetary loss the plaintiff originally alleged great humiliation, anxiety, inconvenience, emotional distress and mental anguish. An amendment eliminated this aver-

ment, and the plaintiff limited herself to her claim for actual financial loss, stating the same to have been in excess of $10,-000. It might be noted, however, that another unamended paragraph of the complaint avers that on account of the fraudulent promises of the defendant she was "induced to and did remain unmarried" and held "herself in readiness to marry the defendant" and a later paragraph avers that by reason of these fraudulent promises plaintiff suffered damages.

The defendant has moved to dismiss the complaint and to have it stricken from the record. The former motion is on the ground that the complaint fails to state a cause upon which relief can be granted by this court. The latter motion is on the ground that the complaint contains scandalous matter and so should not remain subject to public scrutiny.

It is the contention of the defendant that the relief sought is barred by enactments of the Pennsylvania and New York legislative bodies. Act of June 22, 1935, Pennsylvania, P. L. 450, as amended, 48 P. S. § 170 et seq.; Act of March 29, 1935, New York Laws, ch. 263, adding Civil Practice Act, § 61-a et seq. These acts abolish causes of action for breach of contract to marry, forbid institution of such actions, provide that no act done shall operate to give rise to such actions, and provide that no contract to marry shall give rise to any cause of action for the breach thereof.

▆▆▆ Therefore, if the contract was made in either Pennsylvania or New York and the present action is properly to be deemed one to recover for the breach thereof, the complaint must be dismissed. Similarly, if the acts furnishing the basis for the action were done in Pennsylvania or in New York and the action is properly to be deemed one to recover for breach of contract to marry, the complaint must be dismissed. Furthermore, though the misrepresentation and contract may have been made elsewhere, if the loss was sustained in either Pennsylvania or New York and an action for relief would be barred there, the complaint must be dismissed, since the law of the place where the loss was sustained determines whether there was actionable fraud. Restatement of Conflict of Laws, § 377(4); Keeler v. Fred T. Ley & Co., 1 Cir., 49 F.2d 872; Id., 1 Cir., 65 F.2d 499.

It is reasonable to infer either that the representations, promises, and contract were made in either New York or Pennsylvania, the respective residences of the plaintiff and defendant, or that the losses were sustained in New York or Pennsylvania. Under either circumstance, the action is barred here if it is deemed essentially one to recover for a breached contract.

Plaintiff contends, however, that this suit is not predicated upon a breach of promise to marry. The gravamen of the action, it is urged, smacks of fraud and deceit and there never was a contract because there could never have been a meeting of the minds, inasmuch as the defendant never intended to enter into a contract to marry.

Turning to the fundamental proposition here presented, it must be admitted that there is but meager authority to facilitate determination whether the instant action for injury consequent to fraud involved in a fraudulent promise to marry is within the governing prohibitory enactment. However, two recent decisions interpreting the New York Statute provide some assistance and guidance.

In the case of Sulkowski v. Szewczyk, 255 App.Div. 103, 6 N.Y.S.2d 97, 98, the plaintiff alleged a proposal accepted under a misrepresentation that the defendant was single. To meet the objection that the action was barred by the New York statute, it was averred that the suit was founded on fraud rather than on the breached promise. The court said: "If plaintiff's contention be correct, then any action based upon a breach of promise to marry could be turned into an action for misrepresentations by merely alleging that the promise of marriage was a sham, made solely for the purpose of taking advantage of the plaintiff."

The Sulkowski case appears to have been stronger than the instant case because in that case defendant was already married when he made his promise to marry plaintiff. Clearly he never intended to perform. Nevertheless, the Court held that the statute applied, and that the effort of the plaintiff to escape its provisions was ineffective.

The other case involved fraudulent procurement of a consummated bigamous marriage. Snyder v. Snyder, 172 Misc. 204, 14 N.Y.S.2d 815, 816. It was an action to recover damages for the injury resulting from the fraud. The court declared that the action was not founded on breach of

promise, but on injury resulting from change of status, and said: "Accordingly there has been no resort to the form of action in deceit as a subterfuge and attempt to circumvent the statutory prohibition." It was further stated that, as an action to recover damages for a change of status, it was not subject to abuse by unscrupulous persons, and hence not within the letter or intendment of a statute abolishing civil actions for breach of promise.

It seems to me that there is a policy enunciated by these enactments abolishing breach of promise actions which is broader than their letter. The legislatures evidently have been prompted by concern for the public morals and for the frequently innocent victims of breach of promise actions to preclude resort to the courts for relief from injury consequent to breached promises of marriage. This is true whether the acceptance was made as a result of succumbing to the deceitful wiles of a gay Lothario or as a result of the worshipful wooing of an ardent yet sincere swain. The legislatures did not intend that courts should explore the minds of suitors and determine their sincerity at the moment of proposal of marriage but rather declared it to be the policy of the state that in the event a breach of the promise occurs relief will be denied in the courts.

The evil sought to be overcome was reasonably deemed serious enough to justify a denial of the judicial process to those asking relief from real as well as fictitious wrongs. Cases based on averments similar to those here alleged had in many instances been supported by perjured testimony and consequently brought discredit on the courts. Further, actions of this sort have been declared a menace to the marriage institution, which is a vital concern of the various states. See the declaration of policy prefacing the above-cited New York enactment.

The suit here involved is essentially a sort in which the service of the summons or merely the threat to do so is often sufficient to cause a settlement even when there is not any merit to the alleged cause of action. Thus, it is made clear that, as the above-cited cases indicate, to effect the prohibition enacted by the legislatures it will prove necessary to bar actions which though tortious in form are contractual in essence. That is, it will prove necessary to guard against resort to the action of deceit as a "subterfuge and attempt to circumvent the statutory prohibition." See Snyder v. Snyder, supra.

The breach of promise occurred in New York, and under the New York Statute no cause of action arose "either within or without" New York. The Pennsylvania Statute is similar. Furthermore, Pennsylvania has declared that no suits for breach of promise shall be begun or prosecuted in this state. 48 P.S. § 173. I deem the instant action to be essentially one for a breach of promise to marry and within the prohibition of the Pennsylvania Statute. It is clear that such a cause of action, even if it arose in a state other than New York or Pennsylvania, and even if it were valid where it arose, would not be enforced by the Pennsylvania courts.

It would seem proper for a federal court to follow the rules of the state courts of their district on a question of conflict of laws. Waggaman v. General Finance Company of Philadelphia, 3 Cir., 116 F.2d 254, decided November 27, 1940; Goodrich, Conflict of Laws, 2d Ed., § 12. It is the Pennsylvania rule not to enforce, through any consideration of comity, a right of action given by another state, if to do so would be against a declared policy of the situs of the forum. McCurdy's Estate, 303 Pa. 453, 154 A. 707; Sutterly v. Fleshman, 41 Pa.Super. 131. This is the rule by which I shall be guided. Since the situs of this forum lies within the territorial limits of Pennsylvania, it is proper to enforce the policy of Pennsylvania. The propriety of this conclusion may appear doubtful, in light of the case of Wawrzin v. Rosenberg, D.C., 12 F.Supp. 548. However, I am decided that a due consideration of all the factors here involved warrants enforcement of the Pennsylvania policy in this instance. Union Trust Company v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368; Slater v. Mexican National R. R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L. Ed. 900; Texas & Pacific Railway Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 825; Lauria v. E. I. Du Pont De Nemours & Co., D.C., 241 F. 687; Hollenbach v. Elmore & H. Contracting Company, C.C., 174 F. 845.

Therefore, without concluding as to its sincerity and factual quality, I am bound, for the reasons stated, to decide that the complaint must be dismissed since it fails to state a claim upon which relief can be granted.

I further conclude that the complaint should be stricken from the record, inasmuch as I deem it scandalous in nature though not evidence of bad faith. On April 24, 1940 Judge Kirkpatrick ordered the pleadings impounded, directed that the names of the parties shall not be mentioned and that the case shall be captioned "A. B. v. C. D."

Motion granted to dismiss complaint and to strike it from the record.