495 A.2d 946

Victoria J. FERRARO and Anthony J. Ferraro, Her
Father, Appellants,

v.

**Surinder SINGH.**

Superior Court of Pennsylvania.

Argued March 6, 1985.

Filed July 5, 1985.

Barbara J. Shah, Bethel Park, for appellants.

Larry A. Housholder, Beaver Falls, for appellee.

Before BROSKY, WIEAND and LEDERER, JJ.*

BROSKY, Judge:

It is said that "hell hath no fury like a woman scorned." [1] The appellant who was, figuratively, left standing at the altar, now wishes to recover for damages arising out of a broken promise to marry. While we are sympathetic with her plight, she is doomed to be disappointed in the law as well as in love. The harsh requirements of statutory law do not permit us to afford her any relief.

Appellant contends that the Heart Balm Act [2] does not bar recovery of sums expended in reliance on a broken promise to marry; nor does it bar recovery for emotional distress. This appeal is from an order dismissing this civil case on preliminary objections. The first count sought reimbursement for expenditures made in anticipation of the wedding of the parties. The second count sought damages in tort for the intentional infliction of emotional distress. We hold that the trial court correctly decided the issue and, accordingly, affirm.

\* \* \*

Appellant Victoria A. Ferraro and Surinder Singh, appellee, met through a dating service in March, 1982, and, after approximately six months, set a wedding date in October

---

\* Honorable William J. Lederer, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. "Heaven has no rage like love to hatred turned. Nor Hell a fury like a woman scorned." William Congreve, "The Mourning Bride," Act III, Sc. 8. No doubt, this characteristic is also shared by males, but, sad to state, not by the appellee in this case.

2. Act of June 22, 1935, P.L. 450, 48 P.S. § 171 et seq.

1983.[3]  In her complaint, appellant averred that in reliance upon this agreement to marry each other, she paid non-refundable deposits for the wedding music, photographer, reception hall and a custom-made wedding dress.  Subsequently, in December, 1982, appellee returned to his native country, India, for the alleged purpose of having an elaborate wedding suit made for himself.  Appellant further stated that appellee concealed his whereabouts and intentions from her from December, 1982 through March, 1983; that, in fact, he did not communicate at all with her during that period; and that in March appellant was informed by an employee at appellee's place of work that appellee had married another woman in India.

Appellant then brought this action against appellee for reimbursement of wedding-related expenditures and to recover damages for emotional distress suffered as a result of appellee's conduct.  To say that she was furious is putting it mildly—and rightfully so.[4]  Appellee filed preliminary objections in the nature of a demurrer.  The trial court sustained those objections and dismissed both counts of appellant's complaint.

*     *     *

Appellant's main contention is that the Heart Balm Act does not bar recovery of sums expended in reliance on an unfulfilled promise to marry.  The trial court held otherwise.  In relevant part the Act provides: "All causes of action for breach of contract to marry are hereby abolished...."  48 P.S. § 171.

■ In clear and unambiguous language, the Act prohibits any cause of action arising out of the breach of the promise to marry another.  Its simple mandate admits of no specious distinctions.  Thus, it is not significant that damages are nominally sought for expenditures made in contemplation of the wedding ceremony and not for the breach

**3.** "Who wooed in haste and means to repent at leisure." William Shakespeare, "The Taming of the Shrew." Art. III, Sc. 2.

**4.** "We shall find no fiend in hell can match the fury of a disappointed woman." Colley Cibbs, "Love's Last Shift," Act IV.

of the marriage promise as such. The forsaken promise to marry caused the non-occurrence of the wedding celebration which occasioned the alleged damages. Regardless of how the damages are labelled, the gist of the cause of action is the breach of the contract to marry.

Appellant cites the Pennsylvania Supreme Court case of *Pavlicic v. Vogtsberger*, 390 Pa. 502, 136 A.2d 127 (1957), to support her position that the Act does not bar her action for expenditures made in anticipation of the wedding. The court in *Pavlicic* stated:

> The abolition is confined to actions *for* breach of contract to marry, that is, the actual fracture of the wedding contract.

> It thus follows that a breach of any contract which is not the actual contract for marriage itself, no matter how closely associated with the proposed marriage, is actionable.

*Id.*, 390 Pa. at 511, 136 A.2d 131–2.

For two reasons, *Pavlicic* does not mandate appellant obtaining a reversal. First, appellant has not alleged that any contract other than the contract to marry was entered into by the parties. She does not, for example, allege that they had entered into a contract providing that appellee would assume responsibility for the purported expenditures—deposits for wedding expenses. In the absence of any such second contract, the damages can only arise from the breach of the promise to marry; and that cause of action is statutorily barred.

Second, while the above-quoted language is rather broad, it has been applied only to conditional gifts. See generally, *In re Marriage of Heinzman*, 40 Colo.App. 262, 579 P.2d 638 (1978), aff'd., 198 Colo. 36, 596 P.2d 61 (1979); 38 Am.Jur.2d, Gifts §§ 83–6; and 46 ALR3d Courtship Presents—Right to Recover § 7.

■ The conceptual basis of a cause of action based on the right to return of gifts made on the condition of subsequent marriage was explained in *Ruehling v. Hornung*, 98 Pa.Super. 535 (1930), subsequently endorsed in *Stanger v. Epler*, 382 Pa. 411, 115 A.2d 197 (1955). The

law of conditional gifts creates a cause of action distinct from breach of promise to marry suits. Its recognition in the common law is based upon an implied condition theory. A gift given in contemplation of marriage, such as an engagement ring, was not final but conditioned upon the occurrence of the wedding. As such, it was subject to being returned to the donor upon the failure of the condition subsequent.

Appellant did not aver that the expenditures in question constituted gifts from appellant to appellee in contemplation of marriage which, because the implied condition was not met, are to be returned.

■ Since appellant did not plead the existence of a gift contract, or of any other contract independent of the contract to marry, her case does not come under the rule in *Pavlicic* and the unambiguously worded statute bars her cause of action.

Assuming, *arguendo*, that the plain phrasing of the Act did not bar recovery here, public policy considerations in interpreting the statute would also bar recovery. The Connecticut case of *Piccininni v. Hajus*, 180 Conn. 369, 429 A.2d 886 (1980), interpreting their Heart Balm Act, contains language which is pertinent here.

> In our view, the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon confused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, *for expenditures made in anticipation of the wedding,* for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered.

*Id.* at 373, 429 A.2d at 888 (emphasis added).[5]

---

**5.** Connecticut's Heart Balm Act is substantially the same as Pennsylvania's.

■ Two of the three enumerated purposes of the Heart Balm Act would not appear to apply here: there is no reason to conclude that appellant was seeking excessive damages or that her claim was fraudulent. However, the third purpose, "to do away with claims ... coercive by their very nature" is directly applicable.

Justice Musmanno expounded on this in *Pavlicic.*

The legislation was made necessary because of the widespread abuse of the vehicle of a breach of promise suit to compel overly-apprehensive and naive defendants into making settlements in order to avoid the embarrassing and lurid notoriety which accompanied litigation of that character. The legislation was intended to ward off injustices and incongruities which often occurred when, by the mere filing of breach of promise suits innocent defendants became unregenerate scoundrels and tarnished plaintiffs became paragons of lofty sensibility and moral impeccability. It was not unusual in threatened breach of promise suits that the defendant preferred to buy his peace through a monetary settlement rather than be vindicated by a trial which might leave his good name in shreds.

*Pavlicic,* supra, 390 Pa. at 508–9, 136 A.2d at 130.

It may well be that since 1957, when *Pavlicic* was written, our sensibilities in this area have become more sophisticated and, consequently, the coercive potential has diminished. Nonetheless, this statutory purpose retains sufficient vitality for us to stop our interpretive search short of finding that the statute allows recovery of expenditures made in anticipation of the wedding. The plain meaning of the statute will be given effect.

Additionally, our research has not disclosed a single case in this country where damages of this type were awarded.[6]

---

6. Indeed, the only case which mentions this type of damages is *Piccininni,* supra, which in *dicta,* states that they are barred by the Act.

Together with the wording of the statute and the policy considerations mentioned above, this leads to the firm conclusion that it would be misguided for us to break new ground and allow this claim.

\*　　\*　　\*

■ Count two of appellant's complaint seeks compensation for her emotional distress caused by appellee's concealment of his whereabouts and intentions from appellant for a three-month period. As a result, appellant claims to have suffered from apprehension, anxiety and mental anguish; and as a consequence thereof became ill and was unable to properly perform her job.

She argues on appeal that her cause of action is based not on the breach of the promise to marry, but on his lack of communication with her.

Unfortunately, it is clear that her distress is so intertwined with the dissipation of her fiancee's affections and the resulting dissolution of the marriage promise that this claim is also barred by the statute.[7] Appellant cannot evade the force and effect of the statute by bringing an action in tort for emotional distress grounded in behavior resulting in the breach of the contract to marry. See *A.B. v. C.D.*, 36 F.Supp. 85 (E.D.Pa.1940).

Appellee's prevailing in this matter is by no means a reflection of our approbation of his conduct. However, the law does not provide a remedy for every wrong; some wrongs are simply not legally cognizable wrongs. The "arrows of outrageous fortune" sometimes come from Cupid's bow, but the law does not provide a shield from them and their consequences.

Order affirmed.

7. This is demonstrated by the absurd situation one would have to posit in order to have the emotional distress cause of action distinct from the breach of the contract to marry: after appellee's absence he returns, they get married, and appellant then brings suit for emotional distress based on his earlier absence.