660 A.2d 1308

**Mary Lucille LAMPUS, Appellant**

**v.**

**Donald R. LAMPUS, Executor of the Estate of Ralph I. Lampus, a/k/a R.I. Lampus, Deceased, Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1995.

Decided June 19, 1995.

68

Bruce S. Gelman, Pittsburgh, for appellant.

Stanley M. Stein, Pittsburgh, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION

ZAPPALA, Justice.

This appeal involves the applicability of the Heart Balm Act, 23 Pa.C.S.A. § 1902 et seq., to causes of action other than breach of promise to marry arising out of the failure of an individual to disclose that he lacked the legal capacity to marry after the parties had participated in a marriage ceremony and cohabitated as if they were husband and wife. We conclude that the Heart Balm Act was not intended to preclude such claims.

Mary Lucille Lampus, the Appellant, filed a civil action against the Appellee, Donald R. Lampus, in his capacity as Executor of the Estate of Ralph I. Lampus, Deceased. In her complaint, Mary Lampus alleged that she married the decedent in Mexico on May 26, 1950, and lived with him as husband and wife until he died on April 9, 1990. It was not until after his death that Mary Lampus learned that he was not legally divorced from his first wife, Caroline Lampus, when their marriage ceremony was performed.

The decedent had obtained a divorce decree in Mexico prior to his wedding with Mary Lampus. Subsequently, the decedent was involved in an action brought against him by Caroline Lampus for a divorce a mensa et thoro in the Allegheny County Court of Common Pleas. The decedent failed to disclose to Mary Lampus that he was involved in the divorce proceedings or that the common pleas court had determined the Mexican divorce was invalid. After the decedent learned that his first marriage to Caroline Lampus had not ended in divorce, he concealed the knowledge from Mary Lampus.

When Ralph Lampus died, Donald Lampus told hospital personnel that Mary Lampus was not the decedent's wife. A nurse informed Mary Lampus of this fact. Until that time she had no reason to believe that she was not the decedent's lawful wife.

Mary Lampus filed a complaint setting forth five separate counts, asserting respectively breach of contract, non-disclosure and concealment, fraud, negligent misrepresentation, and

negligence. Preliminary objections in the nature of a demurrer were filed to the complaint. By order of court dated October 29, 1990, disposition of the preliminary objections was stayed until resolution by the Orphans' Court of a challenge by the Estate of Ralph I. Lampus to Mary Lampus' election to take against the will. On July 9, 1991, the Orphans' Court entered an order granting the Estate's petition to vacate the election to take the spousal share filed by Mary Lampus. Exceptions to the Orphans' Court order were dismissed on October 8, 1991. The Superior Court affirmed in an unreported opinion and order dated August 6, 1992.

On January 29, 1993, the preliminary objections were sustained and the complaint was dismissed. The Superior Court affirmed on the basis that the causes of action were abolished by the Heart Balm Act. We granted the petition for allowance of appeal to address the applicability of the Heart Balm Act to the facts asserted in the complaint.

In reviewing preliminary objections in the nature of a demurrer, we must accept as true the well-pleaded material facts of the party against whom the motion is granted and all reasonable inferences drawn therefrom. *Gabel v. Cambruzzi*, 532 Pa. 584, 616 A.2d 1364 (1992). "In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery." *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976).

The Heart Balm Act states that "All causes of action for breach of contract to marry are abolished." 23 Pa.C.S.A. § 1902.[1] In *Pavlicic v. Vogtsberger*, 390 Pa. 502, 136 A.2d 127

1. The purpose of the Act is set forth at 23 Pa.C.S.A. § 1903 which provides:

(a) *General rule.*—No act done within this Commonwealth shall give rise, within or without this Commonwealth, to a cause of action abolished by this chapter.

(b) *Contract to marry.*—No contract to marry which is made within this Commonwealth shall give rise, either within or without this Commonwealth, to a cause of action for breach of the contract.

(c) *Intention of section.*—It is the intention of this section to fix the effect, status and character of such acts and contracts and to render

(1957), we discussed the purpose of the enactment of the original version of this statute, Act of June 22, 1935, P.L. 450, § 2, previously found at 48 P.S. § 171. The original version contained the identical language of the present statute.

*Pavlicic* involved an action to recover gifts given to a woman in anticipation of a marriage that never occurred. Sara Jane Mills was twenty-six years old at the time the relationship began; George Pavlicic was seventy-five. The May–December romance started when Mills borrowed the sum of $5,000 from Pavlicic to buy a house. She gave Pavlicic a mortgage on the property, but paid back only $449 on the mortgage in three years. Mills then suggested that he satisfy the mortgage since they were to be married. Pavlicic did so. Encouraged by this, Mills was later able to persuade Pavlicic to fund her purchases of jewelry and automobiles. Mills finally convinced him to give her $5,000 to buy a saloon. Mills disappeared with the money, opened the saloon, and married someone considerably younger than Pavlicic.

Pavlicic brought an equity action requesting that the mortgage satisfaction on Mills' property be stricken from the record and that she be ordered to return certain gifts and repay the money which she had received under a false promise to marry. He was granted the requested relief. Mills challenged the trial court's decree on appeal contending that the Heart Balm Act precluded recovery.

We concluded that the Heart Balm Act did not abolish causes of action seeking recovery of antenuptial conditional gifts when the marriage does not occur. The Heart Balm Act was interpreted to eliminate only those actions for breach of contract to marry. It does not extend to all causes of action for the recovery of property based on breach of a contract to marry or all actions resulting from the breach of contract. "[A] breach of any contract which is not the actual contract for marriage itself, no matter how closely associated with the

them ineffective to support or give rise to any such causes of action, either within or without this Commonwealth.

proposed marriage is actionable." 390 Pa. at 511, 136 A.2d at 132.

The Heart Balm Act was enacted to eliminate the potential for fraudulent and overblown claims arising from a broken engagement. The decision not to marry is not actionable; however, the Act does not extend protection to an individual who deceitfully uses the promise to marry to deprive another of his property.

The [Heart Balm Act] aimed at exaggerated and fictional claims of mortification and anguish purportedly attendant upon a breach of promise to marry. The legislation was made necessary because of the widespread abuse of the vehicle of a breach of promise suit to compel overly-apprehensive and naive defendants into making settlements in order to avoid the embarrassing and lurid notoriety which accompanied litigation of that character. The legislation was intended to ward off injustices and incongruities which often occurred when, by the mere filing of breach of promise suits, innocent defendants became unregenerate scoundrels and tarnished plaintiffs became paragons of lofty sensibility and moral impeccability. It was not unusual in threatened breach of promise suits that the defendant preferred to buy his peace through a monetary settlement rather than be vindicated by a trial which might leave his good name in shreds.

\* \* \* \* \* \*

Thus the law of 1935 prohibited, but prohibited only the suing for damages based on contused feelings, sentimental bruises, wounded pride, untoward embarrassment, social humiliation, and all types of mental and emotional suffering presumably arising from a broken marital promise. The Act did not in any way ban actions resulting from a tangible loss due to the breach of a legal contract.

390 Pa. at 508–09, 136 A.2d at 131.

In this case, the Superior Court concluded that each count of the complaint was barred by the Heart Balm Act because the contractual claims asserted a breach of promise to marry

and the tort claims asserted damages for physical and emotional pain, suffering, inconvenience, aggravation of a pre-existing medical condition, embarrassment, humiliation, and loss of reputation in the community. The Superior Court reasoned that actions for damages for all types of mental and emotional suffering arising from a broken marital promise are prohibited under the Heart Balm Act, citing *Pavlicic,* supra.

■ The Superior Court's affirmance of the dismissal of the first count of the complaint for failure to state a cause of action was proper. The first count asserted that the decedent breached the contract to marry Mary Lampus if he did not have the capacity to enter into a lawful marriage with her on the date of their wedding ceremony. This claim is barred by the Heart Balm Act because recovery is sought for a breach of the actual contract for marriage itself.

■ The Superior Court erred, however, in affirming the dismissal of the remaining counts of the complaint. In those counts, Mary Lampus is not asserting a breach of promise to marry. The claims instead assert causes of action for the decedent's negligent or fraudulent conduct in concealing the invalidity of his Mexican divorce decree and his incapacity to enter into a marriage contract with her after performance of their wedding ceremony. Marriage is a civil contract made between parties with the capacity to contract; an individual whose previous marriage has not been dissolved is incapable of contracting to marry another. *In Re Estate of Garges,* 474 Pa. 237, 378 A.2d 307 (1977). The decedent knew that his divorce was a nullity but failed to inform Mary Lampus of that fact.

■ The Heart Balm Act was not intended to preclude an action to recover damages because of a failure to inform a purported spouse of a bigamous marriage, and its specific language cannot be interpreted to abolish causes of action therefor. The Superior Court lost sight of the causes of action asserted by Mary Lampus by focusing entirely upon the nature of damages asserted in the complaint. The tort claims do not arise from the decedent's failure to marry her, but from

the decedent's negligent or intentional conduct in failing to apprise her of the invalidity of the foreign divorce decree and the resulting impediment to his capacity to enter into a marriage contract with her. A claim of tortious conduct which is not based upon an individual's failure to keep a promise to marry is actionable. Only the first count of the complaint was based upon the fracture of the marriage contract; the remaining counts involve causes of action based upon the decedent's conduct after he had fulfilled his promise to marry.

A similar result was reached by the Supreme Court of New Jersey in *Morris v. MacNab*, 25 N.J. 271, 135 A.2d 657 (1957). John MacNab, a married man, developed an acquaintance with Janet Morris during their regular commute to work by bus. MacNab told her that his wife was ill and had been hospitalized. Sometime later, he claimed that his wife had died. They began dating and he later proposed. A marriage ceremony was performed and a honeymoon at Niagara Falls followed the wedding reception. On return from their honeymoon, MacNab began to spend nights away from their home for which he gave various explanations. Morris finally discovered that MacNab's wife was alive and he was spending most of his time with her.

Morris filed a complaint seeking, inter alia, damages for the shame, humiliation, and mental anguish caused by his action in fraudulently inducing her to enter into a marriage that he knew would be bigamous and monetary damages for fraudulently inducing her to advance money to him. MacNab appealed from a jury verdict entered in her favor, asserting that the action was barred by New Jersey's Heart Balm Act. The New Jersey Supreme Court affirmed the jury verdict.

The court stated,

We incline to believe that when our Legislature abolished the right of action for breach of promise it broadly intended to prevent recovery of damages for loss of the promised advantage of marriage but did not intend to preclude an action for restitution of specified property or money transferred on the defendant's fraudulent representation that he

could and would lawfully marry the plaintiff. But we need not pursue that issue, for in the instant matter there are additional factors which strongly support the plaintiff's entire recovery. In the first place, the moneys which the defendant obtained were turned over to him in reliance on various independent representations (apart from any promise to marry) as to their intended use; those representations were false and fraudulent. *In the second place, the defendant is not charged with any breach of promise to marry. On the contrary, he is charged with having fraudulently married the plaintiff when he had no right to marry; none of the well-known evils which the Legislature was seeking to eliminate by its passage of the Heart Balm Act may realistically be said to be present in this situation.*

25 N.J. at 278–79, 135 A.2d at 661 (Emphasis added.).

The order of the Superior Court is affirmed insofar as it sustained the preliminary objections to Count I of the complaint and is reversed insofar as it sustained the preliminary objections to the Counts II through V.[2]

MONTEMURO, J., is sitting by designation.

2. We need not address the second issue briefed by the parties of whether the Superior Court erred in determining that the facts of this case do not support a claim for intentional infliction of emotional distress. The complaint does not plead material facts constituting a cause of action for negligent or intentional infliction of emotional distress. The only reference to emotional harm is set forth in Paragraph 18 of the complaint which states,

Upon being informed on April 9, 1990 that the late R.I.L. was not the husband of Plaintiff, and that the late R.I.L. was married to another woman, Plaintiff suffered and has continued to suffer physical and emotional harm. She has sustained much physical and emotional pain, suffering and inconvenience. She has suffered an aggravation of a preexisting medical condition. If the late R.I.L. was not Plaintiff's husband, she has been deprived of her surviving spouse's share of his Estate and therefore she has been further damaged.

This paragraph merely describes the damages claimed by Mary Lampus, rather than state material facts forming any cause of action. The trial court's opinion describes the separate causes of action set forth in the complaint and does not identify the claims as ones for negligent or intentional infliction of emotional distress. The Superior Court acknowledged that the causes of action were not pleaded, but stated that a plaintiff is not obligated to identify the legal theory

underlying the complaint. Although a plaintiff is not required to specify the legal theory underlying the complaint, the material facts which form the basis of a cause of action must be alleged. *Schreiber v. Republic Intermodal Corporation*, 473 Pa. 614, 375 A.2d 1285 (1977); *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355 (1993).

The complaint in this case sets forth five separate counts consistent with Pa.R.C.P. 1020(a); infliction of emotional distress was not among the five counts. An allegation that a plaintiff suffered physical and emotional pain is insufficient in itself to state a cause of action for infliction of emotional distress.