**Rodger LINDH**

v.

**Janis SURMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1997.

Filed Oct. 6, 1997.

Reargument Denied Dec. 12, 1997.

Frank E. Reilly, Pittsburgh, for appellant.

Joanne R. Wilder, Pittsburgh, for appellee.

Before FORD ELLIOTT, SCHILLER, AND BROSKY, JJ.

FORD ELLIOTT, Judge.

This appeal requires resolution of the novel question whether the law of Pennsylvania should permit retention of an engagement ring or its value by the donee, after the donor of the ring breaks their engagement. The facts follow.

Appellee Rodger Lindh (Rodger) asked appellant Janis Surman (Janis) to marry him on August 24, 1993. Janis accepted his proposal and Rodger gave Janis a diamond engagement ring worth approximately $21,000. Unfortunately, Rodger experienced misgivings about the impending marriage and requested the ring's return in October of 1993. Janis returned the ring. However, Janis and Rodger subsequently reconciled, and once again planned to marry. Rodger again gave the diamond ring to Janis and Janis wore it. Janis began to make wedding plans.

On March 20, 1994, Rodger unexpectedly informed Janis that he no longer loved her and broke their engagement. Janis questioned Rodger, but he was unable or unwilling to explain or to seek counseling regarding his decision. Rodger requested that Janis return the ring, but Janis refused. Litigation ensued. Rodger filed a civil action to recover the ring or its value, which was submitted to arbitration. On September 16, 1994, a panel of arbitrators entered an award in Janis' favor.

Upon Rodger's appeal, the Court of Common Pleas of Allegheny County reversed the decision of the arbitrators.[1] The trial court found no case directly on point and concluded that the issue was one of first impression in Pennsylvania.

The court discovered, however, that other states had addressed the issue, and although the majority of states followed the so-called fault rule, an increasing number of jurisdictions were adopting a no-fault rule. The no-fault jurisdictions hold that absent an agreement to the contrary, the ring is returned to the donor regardless of the circumstances surrounding the engagement's termination. The trial court ruled that the no-fault engagement rule should be followed in Pennsylvania as well.

The trial court's opinion cites with approval a New Jersey case which rejected the majority "fault" rule based upon public policy concerns for the status of women in modern society. *Aronow v. Silver*, 223 N.J.Super.

1. Rodger's Complaint contained a Count for Replevin, which requested judgment of possession of the ring, and a Count alleging Conversion, seeking monetary damages. (Docket entry number 1, filed May 5, 1994.)

344, 348, 538 A.2d 851, 853 (1987). The trial court excerpted the following:

> [t]he fault rule is sexist and archaic, a too-long enduring reminder of the times when even the law discriminated against women. . . . In ancient Rome the rule was fault. When the woman broke the engagement, however, she was required not only to return the ring, but also its value, as a penalty. No penalty attached when the breach was the man's. In England, women were oppressed by the rigidly stratified social order of the day. They worked as servants or, if not of the servant class, were dependent on their relatives. The fact that men were in short supply, marriage above one's station rare[,] and travel difficult abbreviated betrothal prospects for women. Marriages were arranged. Women's lifetime choices were limited to a marriage or a nunnery. Spinsterhood was a centuries-long personal tragedy. Men, because it was a man's world, were much more likely than women to break engagements. When one did, he left behind a woman of tainted reputation and ruined prospects. The law, in a de minimus gesture, gave her the engagement ring, as a consolation prize. When the man was jilted, a seldom thing, justice required the ring's return to him. Thus, the rule of life was the rule of law—both saw women as inferiors.

*Aronow, supra,* 223 N.J.Super. at 348, 538 A.2d at 853 (1987); trial court opinion, 7/12/96 at 3–4.

Adhering to the public policy rationale of *Aronow,* the trial court entered judgment in Rodger's favor in the amount of $21,200. Janis filed post-trial motions seeking reversal of the judgment which were denied on March 11, 1996. This appeal followed.

Although we acknowledge the analysis set forth by the New Jersey court regarding the historical and social history of women, we do not believe that such analysis is useful in an engagement ring case governed by Pennsylvania law. Unlike some jurisdictions, Pennsylvania cases have long observed the law of conditional gifts regarding engagement ring disputes. Therefore, resort to public policy concerns based on archaic notions of the status of men and women in society is not necessary.

Both Janis and Rodger agree that Pennsylvania follows the law of conditional gifts in engagement ring matters. They disagree over what condition renders the gift complete. Janis' position is that the conditional gift of an engagement ring is incident to the engagement itself. The condition attached to the gift is her agreement to marry Rodger. The condition of the gift thus satisfied, she should be entitled to retain the ring.

For his part, Rodger contends that his gift of the engagement ring to Janis was conditioned upon the marriage rather than her agreement to marry him. Because the condition, marriage, never took place, Rodger contends the trial court's award of the ring to him should be affirmed. We agree.

The law of conditional gifts is set forth in the Restatement of Restitution. With particular interest we note that engagement rings are treated differently from other wedding and/or engagement gifts:

*Gifts Made in Reliance on a Relation.*

A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, *unless the conferring of the benefit is conditioned thereon.*

*Comment:*

. . . .

> (b) *Conditional gifts.* The gift may be conditional upon the continuance or creation of a relation, and if conditional the donor is entitled to its return if the relation terminates or is not entered into. The condition may be stated in specific words or it may be inferred from the circumstances. Likewise, as in the case of engagement and wedding gifts, justice may require the creation of a condition although the donor had no such condition in mind.

*(c) Wedding and engagement gifts.* Gifts made in the hope that a marriage or contract of marriage will result are not recoverable, in the absence of fraud. Gifts made in anticipation of marriage are not ordinarily expressed to be conditional and, although there is an engagement to marry, if the marriage fails to occur without the fault of the donee, normally the gift cannot be recovered. If, however, the donee obtained the gift fraudulently or if the gift was made for a purpose which could be achieved only by the marriage, a donor who is not himself at fault is entitled to restitution if the marriage does not take place, even if the gift was of money. If there is an engagement to marry and the donee, having received the gift without fraud, later wrongfully breaks the promise of marriage, the donor is entitled to restitution if the gift is an engagement ring, a family heirloom or other similar thing intimately connected with the marriage, but not if the gift is one of money intended to be used by the donee before the marriage.

Restatement of Restitution, § 58 (emphasis supplied). In addition, the Reporter's Notes to this section recognize that many jurisdictions utilize a fault analysis in resolving engagement ring cases, and that this analysis is inconsistent with the law of conditional gifts.

The engagement ring cases, where universally the plaintiff has been allowed to recover upon the breaking of the promise by the defendant, can rest either upon the ground that the giving of the ring is connected with the consideration, although this seems to be a very low ground upon which to rest it, or that the ring is given as a symbol to be worn only during the continuance of the relation between the parties. If it were a truly conditional gift, it would be immaterial whether the donor or the donee broke the engagement. . . .

Restatement of Restitution, § 58 Reporter's Notes. We now turn to Pennsylvania cases which apply the law of conditional gifts in antenuptial gift contests. We believe these cases make clear that in this Commonwealth, engagement rings are conditional gifts.

An early case, *Ruehling v. Hornung,* 98 Pa.Super. 535 (1930), reflects the Restatement's characterization of an engagement ring as a conditional gift. In *Ruehling,* the donor in contemplation of marriage presented his fiancee with a diamond ring, a diamond wristwatch, and a medallion. The question of who broke the engagement was in dispute and the donee refused to return the three items. In analyzing the status of the three gifts, this court set forth:

> [t]he contention of [the donor] appellant is that gifts to a person to whom the donor is engaged to be married, made in contemplation of marriage, are conditional; and that if the donee breaks the engagement the gifts or their value may be recovered by the donor.

We find no case in this State directly bearing on this question, but in 28 C.J. 651, the law is stated thus: 'A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor. But if the gift is made simply for the purpose of introducing the donor to the donee's acquaintance and to gain her favor, the property is not recoverable, although marriage does not ensue. So where a Christmas present is made by a man to his financee [sic] it becomes her property and the subsequent breaking of the engagement does not entitle him to recover it back.'

*Id.* at 538. Following a review of case law from other jurisdictions, the court stated:

> It will be observed that in each of the cases above cited, in which the court permitted a recovery of the property by the donor, there was a breach of the promise of marriage by the donee. In the case at bar no such breach was proved. It does not appear whether the engagement was broken by plaintiff or whether it was dissolved by mutual consent. It follows that in order to permit a recovery by plaintiff, it would be necessary to hold that the gifts were subject to the implied condition that they would be returned by the donee to the donor whenever the engagement was dissolved. Under such a rule the marriage would be a necessary prerequisite to the passing of an absolute title to a Christmas gift made in such circumstances. *We are unwilling to go that far, except as to the engagement ring. Such a ring is given as a pledge or symbol of the contract to marry. We think that it is always given subject to the implied condition that if the marriage does not take place either because of the death, or a disability recognized by the law on the part of, either party, or by breach of the contract by the donee, or its dissolution by mutual consent, the gift shall be returned. It only becomes the absolute property of the recipient if the marriage takes place.* Good sense usually secures the return of the ring. The English cases seem to be in harmony on this question. See Cohen v. Sellar, 1 K.B. 536 (1926); and Jacob v. Davis, 1 K.B. 532 (1917). Our conclusion is that plaintiff's evidence in respect to the engagement ring was sufficient to take the case to the jury. As to the other articles involved the evidence was insufficient.

*Id.* at 540 (emphasis added). Hence, as far back as 1929, this court has adhered to the law of conditional gifts with respect to engagement rings. The retention of the gift is subject to the implied condition that marriage take place and absent that occurrence,

for whatever reason, it is impossible for the gift to become complete.[2]

The law of conditional gifts as set forth in *Ruehling, supra,* was cited with approval in *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957) (fraudulent promise to marry required donee to return cash, a vehicle, jewelry, and a saloon), and in *Ferraro v. Singh,* 343 Pa.Super. 576, 495 A.2d 946 (1985). Although *Ferraro* is factually distinguishable, it being an appeal to recover costs for traditional preparatory wedding expenses, the analysis is supportive of our decision today:

> [t]he conceptual basis of a cause of action based on the right to return of gifts made on the condition of subsequent marriage was explained in *Ruehling v. Hornung,* 98 Pa.Super. 535 (1930), subsequently endorsed in *Stanger v. Epler,* 382 Pa. 411, 115 A.2d 197 (1955). The law of conditional gifts creates a cause of action distinct from breach of promise to marry suits. Its recognition in the common law is based upon an implied condition theory. A gift given in contemplation of marriage, such as an engagement ring, was not final but conditioned upon the occurrence of the wedding. As such, it was subject to being returned to the donor upon the failure of the condition subsequent.

*Ferraro, supra* at 580–81, 495 A.2d at 948.

The law of conditional gifts has also been followed by courts of this Commonwealth in *Stanger v. Epler,* 382 Pa. 411, 115 A.2d 197 (1955) (denying donor's claim for one-half interest in bank account established by him and donee prior to marriage; distinguishing conditional gift analysis which returned gift to donor in *Ruehling* on the basis gift was an engagement ring); *Semenza v. Alfano,* 443 Pa. 201, 279 A.2d 29 (1971), *citing Stanger* and noting that (gift made in contemplation of marriage must be returned pursuant to a fictitious promise implied in law; donee required to reconvey interest in real estate purchased in contemplation of remarriage); and *Nesbit v. Alton,* 45 D. & C.3d 683 (1986),

---

**2.** Summary Pa. Jur.2d, Property § 15:29. The "Practice Guide" notes to section 15:29 (Gifts in Contemplation of Marriage) instruct that:

A promise to return an antenuptial gift made in contemplation of marriage if the marriage

does not take place is a fictitious promise implied in law. There need not be any promissory assent, either written or unwritten. *Id.* at § 15:29.

*citing Ruehling, Stanger,* and *Semenza* and holding all items of personal property including engagement ring were conditional gifts from donor to donee; engagement mutually terminated.

Janis, while recognizing the above authority, nevertheless distinguishes it either on its facts or because there is no appellate case which clearly sets forth what should happen to the engagement ring if the donor breaks the engagement. However, we believe that this question is answered by the law of conditional gifts. As set forth in the Restatement of Restitution, if the engagement ring is a conditional gift, as Pennsylvania law has consistently held, then it is immaterial who breaks the engagement. Contrary to Janis' contention, the gift of the engagement ring, without more, is conditioned upon the marriage taking place and the ring must be returned to the donor if that condition does not occur.[3]

Pennsylvania jurisprudence merely follows basic principles of restitution found in gift law in awarding antenuptial property. While Rodger, the donor in this case, proposed marriage, the marriage between Rodger and Janis did not occur. Thus, we find the gift of the ring to Janis at the time of their betrothal was subject to an implied condition requiring its return if the marriage did not take place.

After careful analysis, and for all of the reasons set forth above, we affirm the order of the trial court which denied Janis posttrial relief and awarded judgment in Rodger's favor.

Order affirmed.

SCHILLER, J., files a dissenting opinion.

SCHILLER, Judge, dissenting.

Since Eve gave an apple to Adam misunderstandings about gifts have existed. Today, in the interest of simplicity, we have held there are no such misunderstandings concerning engagement rings: they are no longer freely given expressions of love and affection, they are trophies that must be earned. Here, the testimony of both parties establishes that appellee was at all times ready, willing, and able to fulfill her promise to marry appellant[1] (and thus fulfill the "condition" that the majority now says was the necessary prerequisite to her entitlement). Why then should plaintiff be permitted not once, but twice, to prevent the fulfillment of that condition and at the same time profit from his actions? What has become of the maxim that one should not profit from one's wrong? I note that the Pennsylvania cases relied upon by the majority both involved donees who had refused to fulfill the promise to marry, and in one instance the donee had fraudulently induced the offer of marriage.[2] In those instances analyzing the situation as one involving the failure to honor expected conditions was undoubtedly correct. However, where as here it is the donor who has prevented the fulfillment of the condition (i.e. the marriage), an examination of his motivation and assessment of fault is both appropriate and fair.[3] See *Heiman v. Parrish,* 262 Kan. 926, 942 P.2d 631, Dissenting Opinion, Marquardt, J., (Kan. 1997).

While looking for the simplest solution to a problem may sometimes make life easier for

---

**3.** As this court recognized in *Ferraro, supra* at 583, 495 A.2d at 950, "some wrongs are simply not legally cognizable wrongs." If we were to address, through a fault analysis, Janis' argument that Rodger should not be rewarded for preventing the condition of marriage from occurring, we would be required to examine his refusal to marry. However, we believe any analysis of the breach of promise to marry is abrogated by the Heart Balm Act. *See* 23 Pa.C.S.A. § 1902 *et seq.; Lampus v. Lampus,* 541 Pa. 67, 660 A.2d 1308 (1995).

**1.** Although after appellant's attempt to besmirch appellee's character during the bench trial by alleging scandalous conduct (a claim to which

the trial court gave no credence, nor apparently did appellant's own counsel), it appears that with or without the ring appellee is better off.

**2.** See *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957); *Ruehling v. Hornung,* 98 Pa.Super. 535 (1930).

**3.** I disagree with the majority's contention that examining the donor's intent for refusing to proceed with the marriage would implicate the Heart Balm Act. *See* 23 Pa.C.S. § 1902 *et seq.* Appellant is not seeking damages for an unfulfilled promise of marriage, nor did she initiate any action, rather she is seeking to keep that which she thought was freely given to her.

the courts (though I detect no tumult of complaints from trial judges besieged with engagement ring disputes), that does not always accomplish fairness or justice. For example, under the Majority's rule if, prior to the wedding, an engaged man dies intestate his administrator will be required to demand the ring from the bereaved woman because the alleged conditional gift never ripened into a complete gift: I question whether the majority of people would endorse such a demand. What if the woman loses the ring? Does the man, if he subsequently breaks the engagement, have a cause of action for the value of the ring? If so, we have created the first romantic bailment.

An engagement ring should not be lightly given, and when two people become engaged they are mutually agreeing to prepare for marriage; there should not be a financial reward for one party to call a halt to that preparation.[4]

4. The elimination of a fault based analysis may actually provide an incentive for some men not to fulfill their commitment. It is not hard to conceive of a man who needs an infusion of cash to cast an envious eye on his fiance's finger knowing that he can withdraw his promise with impunity in return for a saleable asset.