Susan Elaine SMITH

v.

THE NATIONAL RAILROAD PAS-
SENGER CORPORATION
("AMTRAK"), et al.

Civil Action No. 98–2816.

United States District Court,
E.D. Pennsylvania.

Oct. 5, 1998.

Alice W. Ballard, Samuel & Ballard, P.C., Philadelphia, PA, for Susan Elaine Smith.

---

William J. Delany, Judith E. Harris, Morgan, Lewis & Bockius, Philadelphia, PA, for National R.R. Passenger Corp. ("Amtrak").

Kenneth D. Kleinman, Stevens & Lee, Wayne, PA, for Fred E. Weiderhold.

## MEMORANDUM

BARTLE, District Judge.

The interesting question presented is whether the claim of plaintiff Susan Elaine Smith ("Smith") against defendant Fred E. Weiderhold ("Weiderhold") is for breach of promise to marry—a cause of action long ago abolished.[1] Weiderhold has moved to dismiss the complaint as to him under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff has not stated a claim upon which relief can be granted.

In considering a Rule 12(b)(6) motion, the court may rely upon the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). All well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the nonmovant. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). A complaint should be dismissed pursuant to Rule 12(b)(6) only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229.

We accept the following facts as true for purposes of the pending motion. At all times relevant Weiderhold was the Inspector General of defendant National Railroad Passenger Corporation ("Amtrak"). From 1988 to March, 1996, Smith was a trainer in Amtrak's Human Relations Department. During their employment at Amtrak, Weiderhold and Smith "became involved in a personal and ultimately, intimate relationship" and planned to marry. In reliance on Weiderhold's misrepresentations that they could not work together at Amtrak if they "were going to continue a serious relationship and married," she resigned her position. Several months later, in early June, 1996, she learned that Weiderhold had "misrepresented himself ... and had never intended to marry her." When she sought reemployment with Amtrak, it refused to rehire her.

In Count I of the complaint entitled "Misrepresentation"—the only count directed against Weiderhold—plaintiff states:

15. Defendant Weiderhold fraudulently induced Ms. Smith to resign from her Amtrak employment by misrepresenting to her that they could not work together at Amtrak once they were planning to marry. Amtrak has no such policy or practice, and Weiderhold had no intention of marrying Ms. Smith.

16. In reliance on Defendant Weiderhold's misrepresentations, Ms. Smith resigned from Amtrak and has suffered and continues to suffer loss of employment, loss of income, loss of retirement benefits, severe emotional distress, pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-economic losses.

Complaint, ¶¶ 15–16.

In June, 1935, the Pennsylvania General Assembly enacted the Heart Balm Act, which provided, "All causes of action for breach of contract to marry are abolished." 23 Pa. Cons.Stat.Ann. § 1902. As if to emphasize the point, the legislation also included the following:

**Actions to enforce prohibited.**—It is unlawful to commence or cause to be commenced, either as litigant or attorney, in a court of this Commonwealth any proceeding or action seeking to enforce or recover upon a contract or instrument proscribed by this chapter, knowing it to be such,

---

**1.** This court has diversity jurisdiction over plaintiff's claim against Weiderhold since she is a citizen of Pennsylvania and he is a citizen of Virginia. Plaintiff has sued Amtrak, Weiderhold's employer, for breach of common law duty to warn, breach of fiduciary duty under ERISA, and quid pro quo sexual harassment.

whether the contract or instrument was executed within or without this Commonwealth.

23 Pa. Cons.Stat.Ann. § 1905(c). In *Pavlicic v. Vogtsberger*, 390 Pa. 502, 136 A.2d 127 (1957), the Pennsylvania Supreme Court, in an opinion by the inimitable Mr. Justice Musmanno, explained the rationale for the legislature's action:

> There is no doubt that in the history of romance a nation could be populated with the lovers and sweethearts (young and old) who have experienced genuine pain and agony because of the defection of their opposites who promised marriage and then absconded. Perhaps there should be a way to compensate these disillusioned souls, but it had been demonstrated that the action of breach of promise had been so misemployed, had given rise to such monumental deceptions, and had encouraged blackmail on such a scale, that the Legislature of Pennsylvania, acting in behalf of all the people, concluded that the evil of abuse exceeded to such an extent the occasional legitimate benefit conferred by a breach of promise suit that good government dictated its abolition.

*Pavlicic*, 136 A.2d at 130.

Shortly after the cause of action for breach of contract to marry was abolished in Pennsylvania, this court had occasion to consider the contours of the General Assembly's action in *A.B. v. C.D.*, 36 F.Supp. 85 (E.D.Pa. 1940). The plaintiff alleged that defendant had "wilfully and knowingly made false and fraudulent representations and promises of marriage to the plaintiff." *Id.* at 85. During their engagement, plaintiff had made gifts to defendant and spent large sums in connection with their impending marriage. By amendment to her complaint, she apparently eliminated any claims for non-economic loss such as emotional distress and humiliation and sought only her "actual financial loss." *Id.* at 85–86. In the face of a motion to dismiss the complaint, plaintiff argued that her claim was not for breach of contract to marry but for fraud and deceit. She further contended that no contract existed because defendant never intended to marry her. The court, finding her position meritless, granted the motion to dismiss. It reviewed the legislative purpose and concluded:

> there is a policy enunciated by these enactments abolishing breach of promise actions which is broader than their letter. The legislatures evidently have been prompted by concern for the public morals and for the frequently innocent victims of breach of promise actions to preclude resort to the courts for relief from injury consequent to breached promises of marriage.

*A.B.*, 36 F.Supp. at 87. The court was convinced that the legislative policy of the Commonwealth would be undermined if parties could bring their actions in tort to avoid the statutory bar. It stated:

> The suit here involved is essentially a sort in which the service or the summons or merely the threat to do so is often sufficient to cause a settlement even when there is not any merit to the alleged cause of action. Thus, it is made clear that, as the above-cited cases indicate, to effect the prohibition enacted by the legislatures it will prove necessary to bar actions which though tortious in form are contractual in essence. That is, it will prove necessary to guard against resort to the action of deceit as a 'subterfuge and attempt to circumvent the statutory prohibition....'

*Id.*

The Pennsylvania Supreme Court first considered the statute some years later in *Pavlicic*, cited above. The plaintiff, a man twice the age of defendant, sued to recover the gifts he had presented to her in anticipation of their marriage. During their courtship, he gave her an expensive engagement ring and at her urging bought her a car and marked satisfied a mortgage debt she owed him. He also provided her with money to buy a saloon. *Pavlicic*, 136 A.2d at 128–30. At that point, she absconded. In upholding a verdict in his favor, the Supreme Court made it clear that the Heart Balm Act did not abolish the pre-existing law allowing lawsuits for recovery of ante-nuptial conditional gifts. Mr. Justice Musmanno colorfully explained:

> To allow Sara Jane to retain the money and property which she got from George by dangling before him the grapes of matrimony which she never intended to let

him pluck would be to place a premium on trickery, cunning and duplicitous dealing. It would be to make a mockery of the law enacted by the Legislature in that very field of happy and unhappy hunting.

*Pavlicic,* 136 A.2d at 130.

More recently, the Pennsylvania Superior Court decided *Ferraro v. Singh,* 343 Pa.Super. 576, 495 A.2d 946 (1985). There, plaintiff claimed that in reliance on defendant's promise to marry her, she had spent significant sums, which were not refundable, for wedding music, photographer, reception hall, and a custom made wedding dress. The court made it clear that in contrast to *Pavlicic,* this was not a case where one party had made a gift to the other conditioned on the marriage later taking place. *Ferraro,* 495 A.2d at 948. Nor had defendant agreed to pay the wedding expenses incurred by plaintiff. While recognizing that *Pavlicic* contained dicta that might support plaintiff's claim, the court held that the Heart Balm Act prohibited recovery 'of expenditures made in anticipation of the wedding.' *Id.* at 949. As in the case at issue, plaintiff attempted to avoid the statutory bar by arguing that her emotional distress claim sounded in tort and was not predicated on the breach of promise to marry. The court would have none of it. In upholding the dismissal of the complaint, the Superior Court explained, "Appellant cannot evade the force and effect of the statute by bringing an action in tort for emotional distress grounded in behavior resulting in the breach of the contract to marry." *Id.* at 950 (citing *A.B.,* 36 F.Supp. at 87).

The latest pronouncement by the Pennsylvania Supreme Court on the subject of breach of contract to marry was in *Lampus v. Lampus,* 541 Pa. 67, 660 A.2d 1308 (Pa. 1995). Plaintiff Mary Lampus sued the estate of her late "husband" Ralph Lampus for breach of contract, non-disclosure and concealment, fraud, negligent misrepresentation, and negligence. She claimed that decedent and she married and lived together as husband and wife for 40 years. After his death, she learned for the first time that he was never legally divorced from his first wife and that decedent had concealed this fact from her. *Id.* at 1309. In the face of a demurrer to the complaint on the ground that the action was for a breach of promise to marry, the Supreme Court of Pennsylvania allowed it to go forward but only in part. The court distinguished between events occurring before the marriage and those that occurred after the promise to marry had been fulfilled. Only the claims based on the post-nuptial occurrences were held to be viable:

> The Heart Balm Act was not intended to preclude an action to recover damages because of a failure to inform a purported spouse of a bigamous marriage, and its specific language cannot be interpreted to abolish causes of action therefor.... *Only the first count of the complaint was based upon the fracture of the marriage contract; the remaining counts involve causes of action based upon the decedent's conduct after he had fulfilled his promise to marry.*

*Lampus* at 1311. (emphasis added).

At the heart of plaintiff's complaint is Weiderhold's allegedly broken promise of wedlock. Plaintiff asserts in essence that she resigned her position with Amtrak because of this promise and his misrepresentations that she would have to leave her job if "they were going to continue a serious relationship and marry." Thereafter, she purportedly learned that he had never intended to fulfill his pledge and that he had been untruthful to her about her need to resign. Accordingly, Smith says she suffered both economic and non-economic damage.

Unlike in *Pavlicic,* Smith does not seek to recover gifts conditional on the happening of the marriage. Although she may have suffered economic loss because she quit her employment at Amtrak, this fact does not bring her within the ambit of that decision. We note that the Heart Balm Act eliminated the cause of action for breach of contract to marry without limitation, not just for non-economic loss such as mental anguish and humiliation. In both *Ferraro* and *A.B.,* the plaintiffs alleged economic loss, just as plaintiff has done here. Yet, both courts held that no tenable claim existed. We see no material difference between *Ferraro* and *A.B.* and the case before us. Significantly, all relevant

events in the instant action occurred before any nuptial vows were exchanged. Under *Lampus,* such a claim smacks of breach of contract to marry.

Finally, the argument of plaintiff that her claim is for misrepresentation, and not for breach of promise to marry, is unpersuasive. Smith's loss is inextricably bound to defendant's broken promise to wed her. As other courts have done before us, we reject the notion that artful pleading can be used to circumvent the strong legislative policy of Pennsylvania as expressed in the Heart Balm Act to prevent lawsuits such as we encounter here.

While we do not condone the offensive conduct of defendant if in fact he acted as alleged, the court cannot provide plaintiff a remedy. Solace, comfort and restoration in matters of the heart and spirit must be sought and found elsewhere.

The motion of defendant Weiderhold to dismiss the complaint as to him under Rule 12(b)(6) will be granted.