## [No. 1721.]
## LEUPERT v. SHIELDS ET AL.

1. MARRIAGE AND DIVORCE—CONTRACTS—PUBLIC POLICY.

A contract to marry pending proceedings for divorce and while the contracting husband was the lawful husband of another woman, of which the contracting wife had knowledge, was contrary to public policy and good morals and utterly void.

2. DIVORCE AND ALIMONY—NOTICE OF DECREE.

Where a woman who was a witness in a divorce suit, and had knowledge of the purposes of the suit, afterwards married the divorced husband she is chargeable with notice of the contents of the decree and is chargeable with notice of a judgment for alimony against the husband.

3. FRAUDULENT CONVEYANCE—HUSBAND AND WIFE.

Where a divorced husband with a judgment for alimony against him married another woman who had full knowledge of the decree of divorce and judgment for alimony, in pursuance of a marriage contract entered into prior to the divorce, conveyed to his new wife real estate and retained no property from which the judgment for alimony could be made, the conveyance to the new wife was fraudulent and void and the property was subject to the judgment for alimony.

*Appeal from the District Court of El Paso County.*

Mr. H. McGARRY, Mr. J. FIELDS and Mr. GEORGE GARDNER, for appellant.

Mr. JNO. K. VANATTA, for appellees.

THOMSON, J.

This is a suit by Clara Leupert, a judgment creditor of Charles P. Shields, to set aside an alleged fraudulent conveyance of real estate by him to Martha M. Shields, and subject the property to the payment of her judgment.

The complaint alleged that in 1893 the plaintiff, who was the wife of Charles P. Shields, obtained a decree of divorce from him in the circuit court of Cook county, Illinois, to-

gether with a judgment for alimony in the sum of $1,500, and for a solicitor's fee in the sum of $50.00; that Charles P. Shields, having removed to the state of California, the plaintiff's demand was reduced to judgment against him in that state, and that in an action against him upon the latter judgment, in the district court of El Paso county, in this state, of which he had become a resident, and where the property in question was situate, she again recovered judgment.

The answer alleged that the defendant was the wife of Charles P. Shields; that she married him in consideration of his agreement to pay her the sum of $3,500, to be invested as she might see fit; that she was the owner of the property described in the complaint; that it was not put into her name with the intent to defraud the plaintiff, and that when she received the money she had no knowledge that Shields was indebted to the plaintiff.

The replication averred that the defendant and Shields were married on the same day that the decree for divorce and alimony was rendered, and that the defendant then had full knowledge of the facts.

The divorce proceedings were in evidence. The bill of complaint was filed on the 9th day of November, 1893. It charged adultery committed by Shields with the defendant, whose name was then Martha Riedel. The decree was rendered on the 20th day of December, 1893. It awarded to the defendant a divorce as prayed, with $1,500 as alimony, and $50.00 as solicitor's fee. On the day the decree was rendered, Shields and Martha Riedel were together in Crown Point, Indiana, and a telegraphic message being received by him that the divorce was granted, the two were immediately married. It appears that after the plaintiff had recovered her judgment in California, Shields sought relief against it under the insolvent laws of that state, but the relief was denied. The official reporter of the court in which the proceedings were had, testified that the defendant was a witness in the case, and stated that she became engaged to Shields about a month before they were married; that by a contract

then made between them, he was to give her $3,500 in consideration that she would marry him, and they were to be married as soon as a divorce should be procured by his wife in the proceeding then pending.  The defendant, who was a witness for himself at the trial of this suit, did not deny that she so testified.  In answer to questions by her own counsel, she undertook, however, to say that there was no marriage agreement between herself and Shields, until after the receipt of the telegram announcing the divorce.  In view of the facts connected with their presence together in Crown Point, and the occurrences which took place there, this story is improbable, and, we may say, incredible; but whatever effect it might otherwise have had, was completely effaced by her clean-cut statement, given on cross-examination, in answer to questions by counsel for the plaintiff, that the marriage contract was made in the preceding November.

From the evidence, it is beyond question that the marriage contract was made while the plaintiff was still the lawful wife of Shields; and that after it was made, and in pursuance of its terms, Shields and the defendant went to Crown Point to be married as soon as they should receive news of the divorce.  It also abundantly appears that the defendant was entirely conversant with the divorce proceedings.

The contract, having been made while Shields and the plaintiff were husband and wife, was contrary to public policy, repugnant to good morals, and utterly void.  Upon the question of the defendant's knowledge of the judgment for alimony when she received the money, if the question was of any importance, as the court below seems to have thought it was, and as, in view of the entire evidence, we think it was not, it is proper to say that even if she had no actual information of what the judgment was, yet by virtue of her familiarity with the pendency and purpose of the suit in which it was rendered, she is chargeable with knowledge of the judgment to as full an extent as if she had been present in court, and heard it pronounced.

The money of Shields was traced into the property in question, and the evidence of the fraudulent nature of the transaction, in pursuance of which the title was vested in the defendant, and of the guilty purpose of both parties to it, is conclusive.

The judgment is reversed and remanded, with instruction to the district court to enter a decree in favor of the plaintiff for the full relief prayed in her complaint.

*Reversed.*