EDWARD FURMAN, Plaintiff, *v.* LOUIS C. KRAUSS, OLIVE GROVES FURMAN, Also Known as " OLIVE KRAUSS," and PAUL LIVOTI, as County Clerk of the County of Queens, State of New York, Defendants.

Supreme Court, Special Term, New York County, February 14, 1941.

*Edward E. Hoenig,* for the plaintiff.

*Willard Schwartz,* for the defendant Louis C. Krauss.

*Strauss & Abrahams,* for the defendant Olive Groves Furman.

KOCH, J. The plaintiff Edward Furman and the defendant Olive Groves Furman married on or about the 14th day of August, 1920, and lived together thereafter until on or about the 19th day of March, 1937. During their married life, with moneys and funds jointly earned and accumulated by them, they purchased certain real property and executed in connection therewith certain bonds and mortgages. The mortgages were later foreclosed and a resulting deficiency judgment was entered against both in the sum of $29,997.37 on November 28, 1928. The judgment was thereafter and on February 7, 1929, assigned to one Austin Lynch. Thereafter the plaintiff and his wife, the said defendant Olive Groves Furman, accumulated the sum of $30,528.03, which was deposited in six bank accounts for the benefit of plaintiff and his wife. Assumed names were used in each instance. Thereafter and on the 19th day of March, 1937, the defendant Olive Groves Furman deserted her husband and since that time has been living with the defendant Krauss in open relationship of husband and wife. Thereafter, the said defendant Olive Groves Furman, while living separate and apart from the plaintiff and without plaintiff's knowledge or consent, withdrew the said $30,528.03 which had heretofore been deposited in the savings bank accounts in assumed names. On May 3, 1938, she purchased from the Equitable Life Assurance Society of the United States a $20,000 annuity policy in the name of Olive Ethel Groves. Under the terms of the annuity policy the Equitable Life Assurance Society undertook and agreed to pay to her in the name of Olive Ethel Groves the sum of $60.35 a month during her lifetime. The balance of the moneys obtained from the bank accounts was kept by her and part of it was spent on trips and for her own personal use, as she testified.

After the plaintiff learned that his wife had taken the moneys he made demand upon her for their return and also upon the defendant Krauss with whom she is living. When an amicable settlement could not be arrived at, plaintiff threatened to bring action against her to recover the moneys claimed to have been converted. On March 2, 1939, the plaintiff brought an action

against her and the Equitable Life Assurance Society to impress a trust upon the annuity policy in order to restrain the payment of any moneys due and payable thereunder and for other equitable relief. That action was brought before a justice of this court who found that the moneys were the joint property of the plaintiff and the defendant Olive Groves Furman and also that the said defendant took the plaintiff's property and converted the same to her own use, but refused to grant equitable relief by reason of the fact that the plaintiff and the defendant Furman were engaged in an unlawful undertaking in concealing these funds from the judgment creditor. The defendant Olive Groves Furman then proceeded to purchase from Austin Lynch the said deficiency judgment of $29,998.37 for the sum of $650, and took an assignment of the judgment in the name of Louis C. Krauss, the man with whom she is living. The evidence upon the trial was sufficient to indicate that she used the defendant Krauss merely as her dummy. The plaintiff here asks that the court adjudge and deem the plaintiff the owner of the judgment, that it be declared satisfied and that it be discharged of record.

It is the contention of the defendant Olive Groves Furman that the decision heretofore made, which denied the plaintiff equitable relief, is a judgment on the merits for the defendant and that since the judgment has been unanimously affirmed by the Appellate Division (*Furman* v. *Furman*, 259 App. Div. 988) and a motion for leave to appeal denied by the Court of Appeals (284 N. Y. ——), the matter is *res judicata* and requires the dismissal of the plaintiff's complaint in this action. Furthermore, she contends that the plaintiff comes into this court with unclean hands and that no relief can be given him.

There appears to be no merit in the defendant's contention that the matter is now *res judicata*. In the prior action the Equitable Life Assurance Society was a party. The issue there was the disposition of the money in the hands of an innocent third party. Plaintiff here seeks to prevent the defendant Furman, who is his wife and was his coadventurer, from taking advantage of the relationship to her own aggrandizement. (*Meinhard* v. *Salmon*, 249 N. Y. 458; *Peck* v. *Peck*, 110 id. 73.) Since the defendant Krauss was but a mere instrumentality or dummy through whom the defendant Furman acted in obtaining the assignment of judgment, the situation differs from that presented in the prior action. The decisive test as to whether one action is *res judicata* as against another is " whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second." (*Schuylkill Fuel Corp.* v. *Nieberg*

*Realty Corp.*, 250 N. Y. 304.) In the instant case a determination in favor of the plaintiff will neither destroy nor impair any of the rights obtained by the defendant Furman in the prior action and so much of the defense as is predicated on the doctrine of *res judicata* is untenable.

The remaining question is whether this court should hold that the plaintiff is precluded from seeking equitable relief by reason of unclean hands. The doctrine of unclean hands should not be allowed to perpetrate an injustice or permit a party to profit by his own wrong. The doctrine should not be invoked where, as in this case, the consequences of its application would be to produce a result which is contrary to good conscience and public policy and would to a greater extent offend them.

In *Upchurch* v. *Anderson* (52 S. W. 917, 922) the court said: " The rule concerning unclean hands has quite a wide application, but not wide enough to be used merely as a means of punishing a complainant for wrongful, immoral, or illegal acts he may have committed with regard to the subject-matter concerning which he seeks relief, nor at all with regard to such matters when they are purely collateral to the ground of relief sought, and the enforcement of such relief does not in any wise involve the court in such wrongful acts, or place the court in the attitude of furthering such wrongful purpose or plan." Again, in *Hamilton* v. *Wood* (55 Minn. 482, 488; 57 N. W. 208) the court said: " Equity will not interfere or refuse to interfere merely because the subject matter in respect to which relief is asked may have grown out of a fraudulent or illegal transaction. (*McBlair* v. *Gibbes*, 17 How. 237; *Brooks* v. *Martin*, 2 Wall. 81.)" And again, in *Western Union Telegraph Co.* v. *Union Pacific Railway Co.* (3 Fed. 423), the court spoke as follows: " In *Brooks* v. *Martin* it was held, upon full consideration, that after a partnership transaction, confessedly in violation of an act of congress has been carried out, a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract. All of these cases admit the invalidity of a contract bottomed in mmorality or in a violation of a statute, and they all agree that where a party comes into court and asks relief upon such a contract it must be denied. But they make a dist nction between those cases in which a court is asked to enforce such a contract, and those in which a court is asked to deal with property which has been acquired as the result of the execution thereof. Such property may constitute the subject-matter of a suit at law or in equity, notwithstanding the invalidity of the contract under which it was acquired."

Were the plaintiff here not granted relief, the court would be placed in the position of putting the stamp of approval on the acts of an unfaithful wife, absconding with the family funds and buying, with the aid of her paramour, a judgment against her husband with the very money she has improperly taken from him. With the control of the judgment so bought she could put at naught any efforts on his part to recover any of the moneys she had taken from their joint account. She could harass and annoy him and could proceed to enforce the collection of the judgment against him with the result, if successful, that she would be unjustly enriched at his additional expense. Despite her flagrant misconduct, this unthinkable state of affairs might result because she was permitted to use a weapon supplied to her, in effect, by the court.

A maxim of equity will not be applied for the purpose of defeating equity.

Judgment is directed for the plaintiff to the extent of the relief prayed for in subdivisions 3 and 4 of the prayer for relief in plaintiff's complaint.

Settle findings, decision and judgment accordingly.