## MALASARTE v. KEYE.
### No. A-6335.

District Court, Alaska. Third Division. Anchorage.
Sept. 7, 1951.

J. L. McCarrey, Anchorage, for plaintiff.

Kay & Robison, Anchorage, for defendant.

DIMOND, District Judge.

The plaintiff has sued the defendant for recovery of certain rings, or their value, given by the plaintiff to de-

fendant upon the promise of defendant to marry plaintiff, and the defendant's subsequent refusal to fulfill her promise of marriage.

While the defendant appeared by counsel, no evidence was offered on her behalf. The evidence of the plaintiff and his witnesses show that the plaintiff was a friend of the defendant and her husband, Aguilar; was invited to their home and made much of and, upon their request, paid some grocery bills for them; that the defendant told plaintiff she "liked" him and wished to marry him as soon as she could divorce Aguilar; that the plaintiff and defendant thereupon entered into an agreement to the effect that plaintiff should pay the expenses of defendant in making a journey to the States where the defendant would secure a divorce from Aguilar and then marry plaintiff; that defendant in harmony with this program, proceeded to Seattle and shortly thereafter, at her insistence, the plaintiff joined her in that City and then went to San Diego, California, having determined that the defendant could the more speedily secure what is known as a "Mexican divorce"; that the defendant and plaintiff commuted from San Diego to Tiajuana, Mexico, and there, according to the plaintiff's testimony, divorce action was instituted by defendant and eventually a divorce decree was granted. The testimony is vague about the contents of the decree and there is no real certainty that the decree, if it was a decree, purported to divorce the defendant from Aguilar.

After arriving at San Diego, the plaintiff and defendant cohabited as husband and wife and that relation continued until plaintiff departed from Seattle for Alaska on or about May 5, 1950. The period of such illicit relationship must have extended for considerably more than a month. During this time and probably before the alleged decree of divorce was granted, the plaintiff at the request of the defendant, purchased for the defendant an engagement and wedding ring set which cost the plaintiff $1,-225.25, upon the promise of the defendant to marry him

as soon as the divorce could be obtained; that the defendant afterwards changed her mind and persuaded the plaintiff that it would be much better and more in harmony with polite marital procedure that plaintiff and defendant should return to Alaska and thereafter their marriage be celebrated at the Civilian Club at Elmendorf Air Force Base, the plaintiff being a member of that Club.

From San Diego, the parties returned to Seattle and on May 4, 1950, while plaintiff was attempting to secure transportation to Alaska, the defendant quit their hotel leaving a note saying that she must visit her mother who was ill in Florida. The note concluded with these words: "Be sweet and I will see you at home on the 10th. Your wife". The plaintiff returned to Elmendorf on May 5, and has not seen the defendant since. It seems conclusive that the defendant has rejoined her husband, or former husband, Aguilar, and that both of them decline to permit the defendant to go through with her promise to marry the plaintiff.

Two principles of law, apparently in conflict, must be adjusted. 1. The first is that a gift in promise of marriage is conditional and when the party receiving the gift fails to keep the marriage promise, the donor may recover back the gift. 38 C.J.S., Gifts, § 61, page 849, from which the following is quoted: "A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and on breach of the marriage engagement by the donee the property may be recovered by the donor". See Priebe v. Sinclair, 1949, 90 Cal.App.2d 79, 202 P.2d 577; Annotation 92 A.L.R. 604, et seq.

We are not here concerned with the exceptions to the rule wherein absolute gifts may be made whether the donee fulfills the promise to marry or not, because the plaintiff has testified without contradiction that his gifts were made

in contemplation of marriage and in consideration of the defendant's promise to marry him.

2. The other applicable principle is that "a bargain by a married person to marry another than his present spouse on the death or divorce of the latter, is illegal", Restatement, Contracts, Sec. 588. "All bargains which have for their object or tendency the divorce of married persons are opposed to public policy. Bargains to bring suit for divorce or to make no defense to such a suit, or having for their object such purposes, are unlawful." 6 Williston on Contracts, Sec. 1743, page 4933. See Noice v. Brown, 1876, 39 N.J.L. 133, 10 Vroom 133, 23 Am.Rep. 213; Paddock v. Robinson, 1871, 63 Ill. 99, 14 Am.Rep. 112; Smith v. McPherson, 1917, 176 Cal. 144, 167 P. 875, L. R.A.1918B, 66.

It has been suggested that because the rings were purchased and some of the promises made in California, this case may be governed by the "anti-heartbalm" statute law of that State, to be found in Section 43.5 of the Civil Code, edition of 1941. A similar statute of New York embraced in Section 61–a, 61–b, 61–c and 61–d of the Civil Practice Act has been construed by the Court of Appeals of New York to bar recovery of any gift given in promise of marriage. Andie v. Kaplan, 1942, 288 N.Y. 685, 43 N.E.2d 82. However, the California statute does not govern under the the circumstances disclosed by the evidence in this case.

While the present and past marital status of the defendant seems as anomalous as that of the Samaritan woman who lived more than 1900 years ago, St. John, Gospel, Chapter 4, the evidence must be construed as showing that the defendant was Aguilar's wife at the time the original promise relied on by the plaintiff was made. This promise was repeated and reiterated by the defendant even after the alleged decree of divorce had been granted and a copy thereof was received by the plaintiff

and by him delivered to the defendant. The decree itself was not offered in evidence and apparently no serious effort was made to produce it. However strong may be the inclination to give full force and effect to the judgments of the courts of a civilized country like Mexico, the testimony offered by plaintiff raises such grave question as to the existence of any decree, and as to the validity of the decree granted, if there was a decree at all, as to compel the conclusion that the alleged decree of divorce may not be recognized, and therefore, that the defendant was at all times mentioned in the pleadings and still is Aguilar's wife.

██ The contract between the plaintiff and defendant upon which the action is based, was plainly illegal. As one of the incidents of that contract, the plaintiff gave the defendant rings consisting of a set valued at $1,225.25. One who enters into a contract so far against the law cannot expect the law to exert itself for his aid in connection with one of the incidents of that contract, such as the giving of engagement and wedding rings, any more than the law will concern itself with the division of the proceeds of loot among thieves, or the payment of gambling debts.

██ The plaintiff says that he was led into this affair by the defendant, that he was in effect, seduced; but the plaintiff is a man in mid-life, apparently at least 40 years old, and he cannot rightly claim the indulgence that might be given to the ignorance of youth. One who knowingly and voluntarily enters into a contract so forbidden by law must be prepared to pay the consequences. The good fortune of the plaintiff in the refusal of the defendant to marry him may have saved the defendant ten times the cost of the rings. In view of the relationship of the parties as related by the plaintiff himself, perhaps this is a case in which the rings bestowed by the plaintiff upon defendant may be considered as a kind of quid pro quo. That the defendant may have been guilty of wilful fraud

does not alter the legal aspects of the case because the plaintiff in the same unlawful contract participated knowingly and willingly and wilfully in a coincident fraud upon the rights of the defendant's husband.

The action may be dismissed. No attorneys' fee will be taxed.