EDWIN S. LOWE, Respondent, *v.* JAYNE D. QUINN, Appellant.

First Department, June 24, 1969.

*Patrick M. Wall* of counsel (*Edward Bennett Williams,* attorney), for appellant.

*Philip Gelfand* for respondent.

STEUER, J. Defendant appeals from an order which denied her application for summary judgment. Plaintiff sues for the return of a ring. The operative facts, which are not contested, are that he gave the ring to defendant upon her promise to marry him and that she later renounced her intention so to do. Further, that at all material times the plaintiff was married to another. He was living apart from his wife and divorce was contemplated. He alleges that the mutual promises to marry were conditioned upon his ability to obtain a divorce.

Actions for the recovery of an engagement ring have undergone a curious history in this jurisdiction. It was recognized that the ring was distinct from other premarital gifts because of its symbolic nature and was recoverable if the donee terminated the engagement (*Beck* v. *Cohen*, 237 App. Div. 729). However, following the statutory abolition of actions for breach of promise to marry it was held that an action for return of the ring was not maintainable (*Josephson* v. *Dry Dock Sav. Inst.*, 292 N. Y. 666). The underlying theory was that the public policy to deny recognition to claims for damages founded on an alleged breach of the promise to marry embraced actions for the return of gifts predicated on that promise. So the law remained until in 1965 the Legislature enacted section 80-b of the Civil Rights Law, which in pertinent part reads: " Nothing in this article contained shall be construed to bar a right of action for the recovery of a chattel  *  *  *  when the sole consideration for the transfer of the chattel  *  *  *  was a contemplated marriage which has not occurred."

The section further provides for discretionary power in the court, if justice so requires, to award the donee a lien on the chattel for improvements made or to award a money judgment in lieu of one for return of the chattel.

The section does not create a new cause of action. It merely removes the bar which, for a time, had made the rights engendered by the facts unenforceable. This is apparent from the opening words: " Nothing in this article contained shall be construed to bar a right of action ". Patently the Legislature decreed a rule of construction which was contrary to that currently followed by the courts to give effect to the provisions of another statute. As Judge ASCH concluded in a scholarly review of the section: " The new section presumably restores the common-law rules which were in effect prior to the enactment of the anti-heart balm's statute." (*Goldstein* v. *Rosenthal*, 56 Misc 2d 311, 314.)

Reference to those common-law rules determines this action. The essential element which distinguishes the action for recovery

of a ring given in contemplation of marriage from other actions for the return of other gifts the delivery of which has been completed is the breach by the donee of the contract to marry. Where one of the parties is already married the contract to marry is completely void (cf. *Haviland* v. *Halstead,* 34 N. Y. 643; *Williams* v. *Igel,* 62 Misc. 354; *Davis* v. *Pryor,* 112 F. 274). The fact that the married promisor contemplated divorce and the promises were conditional upon that eventuality does not validate the agreement (*Smith* v. *McPherson,* 176 Cal. 144; *Leupert* v. *Shields,* 14 Colo. App. 404; *Noice* v. *Brown,* 38 N. J. L. 228; 49 Harv. L. Rev. 648).

It would logically follow that, there being no valid agreement which could be breached, the gift remains absolute. However, in jurisdictions where the question has arisen decision denying recovery has been placed on grounds of public policy and the equitable principle of clean hands (*Malasarte* v. *Keye,* 13 Alaska 407; *Morgan* v. *Wright,* 219 Ga. 385; *Armitage* v. *Hogan,* 25 Wn. [2d] 672).

The ordered entered January 7, 1969, should be reversed on the law, the motion granted, and cross motion denied, with costs and disbursements to appellant.

TILZER, J. (dissenting). I agree with the majority that section 80-b of the Civil Rights Law did not create a new cause of action, but only removed from the ban of the anti-heart balm statute suits for the return to the donor of gifts in contemplation of marriage.

Here we are concerned with such an action. The plaintiff seeks the return of an engagement ring, a unique type of gift, one whose conditional nature has been recognized for centuries. And, while in this case the condition upon which the ring was given to the defendant could not be carried out at the time, it was the defendant rather than the plaintiff who made impossible consummation of the parties' agreement. Aware of the fact that plaintiff was a married man, that he had been separated from his wife for several years and that a divorce was imminent, defendant attended a party at which the '' engagement '' of plaintiff and defendant was announced. She received a ring from the plaintiff, the subject of this action, a 10½ carat diamond ring valued at $60,000, as a pledge of their understanding. Less than a month after defendant received the ring, it would appear she had second thoughts concerning the plaintiff and stated that '' the agreement entered into between plaintiff and myself was ended.'' When asked to return the ring, her response was '' talk to my lawyer.'' The plaintiff's cause of action is not

based upon breach of a contract to marry, but upon an obligation imposed by law to obtain restitution of property held on condition and to prevent the unjust enrichment of the defendant.

Many years ago Burrough, J. commented that public policy "is a very unruly horse, and when once you get astride it you never know where it will carry you." (*Richardson* v. *Mellish* [1824], 2 Bing. 229, 252.) I do not know that today it would carry us in the same course as that taken by cases decided 60 and more years ago and end with a ruling that the plaintiff's action is one based on a contract void as against public policy. The rising trend of the divorce rate in this country, it is said, reflects a greater social tolerance toward the use of divorce as a means for terminating marriages that have failed to realize their aims. "Of the marriages that took place in the United States in 1900, one in twelve ended in divorce rather than death; of those taking place in 1922, about one in eight. Of contemporary marriages, not less than one in four or five appears destined to end in divorce." In 1900 there were 55,751 divorces; in 1967 it is estimated there were ten times that number. And, while studies present conflicting results, some show that as many as 80% of divorcees remarry. (Encyclopedia Americana, 1959 ed., vol. IX, Divorce, p. 208; The World Almanac, 1969 ed., p. 758.) Assuming, nevertheless, that the plaintiff's action is one based upon a void contract, should the doors of equity be closed to him? He was not attempting to take another man's wife — the defendant was seeking to take another woman's husband! And while it may be that the plaintiff's hands are not too clean, the defendant's hands are covered with more than diamonds. The doctrine of unclean hands, nevertheless, cannot preclude relief to the plaintiff. Since defendant gave her promise with knowledge of the plaintiff's marital status, no injury or wrong was done to her of which she can complain when she herself broke their "engagement." While the plaintiff's contract to marry may be contrary to public policy, his conduct in that regard is unrelated to the subject of the present litigation, the restitution of property given on a condition which the defendant was unwilling to fulfill. "The rule does not go so far as to prohibit a court of equity from giving its aid to a bad or a faithless man or a criminal. The dirt upon his hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction, his hands are as clean as the court can require." (2 Pomeroy, Equity Jurisprudence [5th ed.], § 399, p. 97; *National Distillers Corp.* v. *Seyopp Corp.*, 17 N Y 2d 12, 15–16; *Weiss* v. *Mayflower Doughnut Corp.*, 1 N Y 2d 310, 316:

*Junkersfeld* v. *Bank of Manhattan Co.,* 250 App. Div. 646, 649.) In *Furman* v. *Krauss,* 175 Misc. 1018, 1021, affd. 262 App. Div. 1016, it was said: '' The doctrine of unclean hands should not be allowed to perpetrate an injustice or permit a party to profit by his own wrong * * * 'In *Brooks* v. *Martin* [2 Wall. (69 U. S.) 70] it was held, upon full consideration, that after a partnership transaction, confessedly in violation of an act of congress has been carried out, a partner in whose hands the profits are cannot refuse to account for and divide them on the ground of the illegal character of the original contract. All of these cases admit the invalidity of a contract bottomed in immorality or in a violation of a statute, and they all agree that where a party comes into court and asks relief upon such a contract it must be denied. But they make a distinction between those cases in which a court is asked to enforce such a contract, and those in which a court is asked to deal with property which has been acquired as the result of the execution thereof. Such property may constitute the subject-matter of a suit at law or in equity, notwithstanding the invalidity of the contract under which it was acquired.' ''

In any event, upon this meager record summary judgment may not be granted to the defendant dismissing the complaint upon the ground '' that the agreement I made with plaintiff to marry him was void ''. If indeed, as defendant asserts in her answer and realleges before this court, her promise to marry the plaintiff was *not* the sole consideration for the gift of the ring, then summary judgment may not be granted to her. If there was consideration unrelated to the contract to marry, while it might ultimately sustain the validity of the gift as an unconditional one to secure the defendant's favor or gain her affection, it must nevertheless defeat her motion for summary judgment based on the sole ground that the only consideration for the gift was a marriage promise void as against public policy.

I respectfully dissent and would affirm the order denying summary judgment.

EAGER, J. P., and CAPOZZOLI, J., concur with STEUER, J.; TILZER, J., dissents in opinion.

Order entered January 7, 1969, reversed, on the law, with $50 costs and disbursements to the appellant, the motion granted and the cross motion denied; and the Clerk is directed to enter judgment against the plaintiff with costs.