J-A03016-23

2023 PA Super 124

| ROBERT CAMPBELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JIAN TANG | : | No. 1006 EDA 2022 |

Appeal from the Judgment Entered June 10, 2022
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  2018-005782

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY SULLIVAN, J.:                    **FILED JULY 13, 2023**

Robert Campbell ("Campbell") appeals from the judgment entered in favor of Jian Tang ("Tang").  We affirm.

The relevant factual and procedural history can be summarized as follows.  In May 2016, Campbell met Tang on Match.com, a dating website on which Campbell represented his relationship status as "divorced."  Campbell and Tang began dating and moved in together a few months later.  In March 2017, Campbell proposed to Tang and presented her with a diamond engagement ring along with a matching diamond pendant necklace and matching diamond earrings.  Tang accepted Campbell's proposal and took possession of the ring, necklace, and earrings.

The couple set a wedding date for May 12, 2018.  Campbell requested that Tang sign a prenuptial agreement, and she eventually retained counsel

_____

[*] Former Justice specially assigned to the Superior Court.

to assist her with negotiations regarding the prenuptial agreement. Approximately one week before the wedding date, Tang's counsel discovered that Campbell had never divorced his wife and was still legally married. As Campbell was unable to legally marry Tang, she ended the engagement and left the couple's shared residence without returning the ring, necklace, and earrings.

In July 2018, Campbell sued Tang for replevin, unjust enrichment, and conversion, seeking return of the ring, necklace, and earrings. Tang counterclaimed, asserting fraud, unjust enrichment, and conversion. The matter proceeded to a non-jury bifurcated trial, during which Campbell acknowledged that he falsely represented that he was divorced on his Match.com profile, and admitted that he did not tell Tang that he was still married because "it was a personal thing" and he "didn't think it was that important . . .." N.T., 6/17/21, at 41, 53. Campbell explained that, although his wife, Deborah, had initiated divorce proceedings years earlier, they refrained from finalizing their divorce so that Deborah could continue to receive his healthcare benefits and he could claim additional tax deductions. *See id*. at 36. Campbell admitted that he did not tell Tang that he was still married before he proposed to her. *Id*. at 57. Campbell further admitted that at the time he proposed to Tang, and throughout the entirety of their engagement, he was legally married to Deborah and could not apply for a marriage license to marry Tang because he did not have a final divorce decree.

*See id*. at 216. Tang testified that she did not find out that Campbell was still married until her counsel discovered this fact approximately one week before their planned wedding date. *See* N.T., 8/12/21, at 84. At the conclusion of the non-jury trial, the court took the matter under submission and permitted the filing of post-trial briefs. On December 22, 2021, the trial court entered a decision in favor of Tang on all counts asserted in Campbell's complaint, and in favor of Campbell on all counts asserted in Tang's counterclaim. Campbell filed a post-trial motion for reconsideration and for judgment notwithstanding the verdict. On February 22, 2022, the trial court entered an order denying the motion. Campbell thereafter filed a timely notice of appeal.[1] Tang did not file a cross-appeal. Both Campbell and the trial court complied with Pa.R.A.P. 1925.

---

[1] Campbell purported to appeal from the trial court's order denying his post-trial motion. However, an order denying post-trial relief is a non-appealable, interlocutory order. *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*) (reiterating that an appeal to this Court can only lie from a judgment entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions); *see also* Pa.R.A.P. 301(a) (providing that no order of court shall be appealable until it has been entered upon the appropriate trial court docket). As the trial court had not entered judgment in the case, this Court directed Campbell to file a praecipe for entry of judgment. Campbell complied with this Court's directive, and the trial court thereafter entered judgment in the matter on June 10, 2022. Accordingly, we deem Campbell's appeal to be taken from the entry of judgment and have corrected the caption accordingly. *See Johnston the Florist*, 657 A.2d at 513 (holding that "even though the appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment").

Campbell raises the following issue for our review: "The trial court erred as a matter of law in the trial and decision to render a verdict in favor of [Tang] against [Campbell]." Campbell's Brief at 4 (unnecessary capitalization and internal quotation marks omitted).[2]

When reviewing equitable decrees, our scope of review and standard of review are deferential, but our deference has limits. This Court has explained:

> In equity matters, appellate review is based on a determination by the appellate court of such questions as whether (1) sufficient evidence supports the findings of the judge; (2) the factual inferences and legal conclusions based on those findings are correct; [and] (3) there has been an abuse of discretion or an error of law. Generally, in an appeal from a trial court sitting in equity, the standard of review is rigorous. The function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal.

***Omicron Sys., Inc. v. Weiner***, 860 A.2d 554, 557-58 (Pa. Super. 2004).[3]

_____

[2] We note with disapproval Campbell's vague statement of questions involved, which violates Pa.R.A.P. 2116. We point out that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2101. However, while Campbell's statement of the questions involved is overly broad, we decline to find waiver because appellate review is not hampered, and we are able to discern Campbell's issues from the argument section of his brief.

[3] As explained above, Campbell pleaded causes of action for replevin, unjust enrichment, and conversion in his complaint. However, in his court-ordered Rule 1925(b) concise statement, Campbell did not raise any claim regarding the denial of relief under those causes of action, and instead asserted that he
*(Footnote Continued Next Page)*

Pennsylvania courts have long ruled that an engagement ring or other gift given in contemplation of marriage is a conditional gift which does not vest in the donee until the contemplated marriage occurs and must be returned to the donor if either party breaks the engagement. *See Lindh v. Surman*, 742 A.2d 643, 644 (Pa. 1999) (requiring the donee to return the engagement ring given to her by the donor after the donor broke the engagement); *see also Nicholson v. Johnston*, 855 A.2d 97, 102 (Pa. Super. 2004) (affirming the trial court's directive that, after the engagement was broken, the donee was required to return monies extended by the donor to be used as a down payment for the purchase of a house to be inhabited by the parties after their contemplated marriage). As our High Court explained:

> A gift given by a [donor] to a [donee] on condition that [the donee] embark on the sea of matrimony with [the donor] is no different from a gift based on the condition that the donee sail on any other sea. If, after receiving the provisional gift, the donee refuses to leave the harbor, -- if the anchor of contractual performance sticks in the sands of irresolution and procrastination -- the gift must be restored to the donor.

*Lindh*, 742 A.2d at 644 (quoting *Pavlicic v. Vogtsberger*, 136 A.2d 127, 130 (Pa. 1957)).

--------------------------------------------------

is entitled to the return of the ring, necklace, and earrings pursuant to established Pennsylvania case law regarding engagement gifts. *See* Concise Statement, 3/31/22, at 2-4. Thus, any claim regarding the specific causes of action pleaded in the complaint are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

Notwithstanding this well-established tenet of Pennsylvania legal jurisprudence, we must determine whether the rule applies when the donor of an engagement ring or other gift given in contemplation of marriage lacks the capacity to contract to marry at the time of the proposal and all times during the purported engagement. In other words, does the rule presuppose that that the donor has the capacity to enter marriage at the time of the proposal and all times during the purported engagement.

In this Commonwealth, marriage is regarded as a civil contract made between parties with the capacity to contract. *See Lampus v. Lampus*, 660 A.2d 1308, 1311 (Pa. 1995).[4] Both parties entering into a marriage must have the legal capacity to marry, and if either party is already married, any attempted subsequent marriage is absolutely void. *See Watt Estate*, 185 A.2d 781, 785-86 (Pa. 1962) (holding that, because the decedent did not

---

[4] Historically, Pennsylvania has recognized two types of marriage: ceremonial and common law. *See In re Estate of Carter*, 159 A.3d 970, 974 (Pa. Super. 2017). However, the Pennsylvania legislature abolished the doctrine of common law marriage effective January 1, 2005. *See* 23 Pa.C.S.A. § 1103. Notwithstanding, section 1103 of the Marriage Law permits the legal recognition of common law marriages contracted before January 1, 2005. *See id*. While we recognize that some of the cases cited herein involve common law marriages, our jurisprudence makes clear that the capacity to contract to a marriage is an essential prerequisite to all marriages, whether ceremonial or common law. *See*, *e.g.*, *Lampus*, 660 A.2d at 1311 (holding that capacity to marry is essential for a ceremonial marriage); *Rosenberger Estate*, 65 A.2d 377, 380 (Pa. 1949) (holding that capacity to marry is essential for a common law marriage).

obtain a valid divorce decree from his prior wife, he lacked the legal capacity to remarry another and, hence, the subsequent marriage was deemed void); *see also Lampus*, 660 A.2d at 1311 (holding that an individual whose previous ceremonial marriage has not been dissolved is incapable of contracting to marry another); *Rosenberger Estate*, 65 A.2d at 380 (holding that, because the decedent was still married to his common law wife, he "was, therefore, legally incapable of contracting another valid [common law] marriage," which was deemed a nullity); *Sharpe v. Fed. Window & Office Cleaning Co.*, 19 A.2d 509, 514 (Pa. Super. 1941) (holding that one who is married cannot lawfully marry again unless the marriage has been dissolved by absolute divorce or by death, and if a second marriage is entered into, it is void *ab initio*).

Campbell concedes that he was legally married to Deborah at the time he proposed to Tang and throughout the entirety of their engagement. *See* Campbell's Brief at 6, 8, 11. However, Campbell maintains that his continued marriage to Deborah was "a matter of economic viability so that [she] would be able to maintain an affordable lifestyle." *Id*. at 11. Campbell claims that he presented evidence to the trial court that he made a "serious and good faith effort . . . to complete his promise to marry . . . Tang," including retaining legal counsel and expending legal costs to prepare and revise pre-nuptial agreements. *Id*. According to Campbell, Tang's sincerity regarding the marriage should be questioned because she failed to execute any of the

prenuptial agreements that he presented for her to sign. Campbell additionally claims that Tang was aware of his marital status by May 9, 2018, which was three days before their planned wedding date. *See id*. at 13-14.

Campbell urges this Court to rely on a 1969 Duquesne University Law Review article[5] which considered a ruling made by a New York trial court in *Lowe v. Quinn*, 301 N.Y.S.2d 361 (1st Dep't 1969). In *Lowe*, the donor was married to another woman when he proposed to the donee and presented her with an engagement ring. The donee was aware that the donor was married. Nevertheless, the donee accepted the engagement ring and thirty days later she ended the engagement and refused to return the ring. The donor then filed an action to recover the engagement ring. The trial court ruled that the donee must return the ring. *See id*. On appeal, the intermediate appellate court reversed and ruled that the contract to marry was completely void because the donor was already married at the time of the proposal, and the fact that he contemplated getting a divorce did not validate the agreement to marry. *See Lowe v. Quinn*, 301 N.Y.S.2d 361, 362 (App. Div. 1969) (holding that the married donor's gift of the engagement ring was unconditional and absolute). On further appeal, the New York Court of Appeals affirmed, concluding that, because the donor was married at the time of the proposal, the engagement to marry was void as against public policy, and the donor was

---

[5] *See* 8 Duq. L. Rev. 185 (1969) (William C. Costopoulos, *Domestic Relations - Gifts in Contemplation of Marriage*).

not entitled to recover the engagement ring.  ***See Lowe v. Quinn***, 267 N.E.2d 251, 252 (N.Y. 1971).

The Duquesne University Law Review article, which was written without the benefit of the New York Court of Appeals decision, posited that, if the same case should arise in Pennsylvania, a court should deem the donor's marital status at the time of the proposal as irrelevant and immaterial and permit recovery of the engagement ring by the donor in the event that the engagement is broken.  Campbell suggests that we should not follow the reasoning of the New York intermediate appellate court in ***Lowe***.  Instead, Campbell urges this Court to adopt the rationale espoused by the trial court in ***Lowe***, as advocated by the author of the Duquesne University Law Review article.[6]  Campbell thus contends that this Court should deem his marital status as immaterial and irrelevant, and apply established Pennsylvania law regarding engagement gifts to require Tang to return the ring, necklace, and earrings to him.[7]

---

[6] Initially, we observe that this Court is not bound by commentary set forth in law review articles.  Nor is this Court bound to follow a trial court opinion, let alone one from another jurisdiction which has been reversed on appeal.  Finally, we point out that ***Lowe*** is factually distinguishable from the instant matter, as the donee in ***Lowe*** was, at all times, aware that the donor was married.

[7] Campbell also argues that the Heart Balm Act, 23 Pa.C.S.A. § 1902, precludes Tang's recovery in her counterclaims.  However, the trial court found in favor of Campbell on all of Tang's counterclaims, and she did not appeal that ruling.  Thus, her counterclaims are not at issue in this appeal.

The trial court considered Campbell's issue and concluded that it lacked

merit. The court reasoned:

> The crucial distinction between well-settled Pennsylvania law and this current matter is the impediment of [Campbell's] existing marriage at the time that the engagement occurred. This still existing legal marriage is a fact that did not exist in the relied-on Pennsylvania case law involving the return of engagement gifts. . . .
>
> Here, the existence of [Campbell's] marriage was still legally recognized because a final divorce decree was intentionally left unsigned. . . . [Campbell] did not take the steps necessary to remove this impediment at any time, despite his knowledge that he could not actually get a marriage license until he had a finalized divorce decree. Throughout the duration of the relationship, at the time of the engagement, or during the entirety of the engagement, [Campbell] was never able to become married to [Tang].
>
> The lack of a finalized divorce decree was a legal impediment to the contract to marry from its inception, therefore making the intended contract to marry void. Since the contract to marry was incapable of ever being fulfilled, the Pennsylvania law put forth by [Campbell] is inapplicable to this case . . .. [T]herefore[,] any gifts provided by [Campbell] to [Tang] would be gratuitous in nature and are not considered as gifts in contemplation of marriage.

Trial Court Opinion, 7/27/22, at 8-9.

Based on our review, we conclude that the findings of the trial court are

supported by competent evidence and the trial court committed no error in

any application of the law. Here, there is no dispute that Campbell was legally

married to Deborah when he proposed to Tang and presented her with the

ring, necklace, and earrings. There is also no dispute that, due to his existing

marriage to Deborah, Campbell lacked to capacity to marry Tang at the time

of the proposal and at all times during their engagement. ***See Lampus***, 660 A.2d at 1311; ***see also Rosenberger***, 65 A.2d at 380; ***Sharpe***, 19 A.2d at 514.

In light of our established jurisprudence regarding Campbell's impediment to marry Tang, it follows that he also lacked the capacity to propose an agreement to marry her. While no Pennsylvania appellate court has considered this precise issue, we believe that such a determination is a logical extension of existing Pennsylvania case law regarding the incapacity of an individual to contract to marry another when his or her prior marriage has not been dissolved by an absolute divorce or by the death of his or her spouse. Accordingly, we hold that an individual whose previous marriage has not been dissolved by absolute divorce or by death is incapable of proposing a contract to marry another, and if such a proposal is made by the married individual, the purported engagement is void *ab initio*, and any gift given in contemplation of the purported engagement constitutes an unconditional gift.

Having concluded that Campbell's marriage proposal to Tang, which was made while he was legally married to Deborah, was void *ab initio*, Campbell's gifts of the ring, necklace, and earrings were not conditioned on the act of marriage and therefore constitute unconditional gifts that Tang is not required to return. Consequently, we affirm the trial court's judgment in favor of Tang.

Judgment affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/13/2023*