J-A18002-25

2025 PA Super 205

RONALD BORDONE

        Appellant

        v.

VIRGINIA BORDONE

:   IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:   No. 3155 EDA 2024

Appeal from the Order Entered October 28, 2024
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-60355

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

OPINION BY OLSON, J.:          **FILED SEPTEMBER 16, 2025**

Appellant, Ronald Bordone, ("Husband") appeals from the October 28, 2024 order entered in the Court of Common Pleas of Bucks County that dismissed his complaint requesting a declaration of annulment of his marriage to Virginia Bordone ("Wife").[1]  We affirm.

The trial court summarized the factual history as follows:

---

[1]   An annulment proceeding, as distinguished from a divorce proceeding, is merely declarative of an existing status[.  I]t does not create a new relationship or sever a prior one.  An annulment proceeding provides a method by which a judicial record may be obtained, formally declaring void, marriages which by the law are void and recited by the act itself to be void.  It is a means furnished by the legislature for rendering facts and their effect judicially certain.

***Faivre v. Faivre***, 128 A.2d 139, 142 (Pa. Super. 1956) (citations, ellipsis, and original quotation marks omitted).

Wife married her first husband[] in Pennsylvania in 1988[,] and they separated in 1994. Husband and Wife began their relationship in December [] 1994, at which point Husband was aware that Wife was still legally married to [her first husband]. Husband and Wife began cohabitating in Philadelphia[, Pennsylvania,] in [spring] 1995.

[Wife's first husband] served Wife with divorce papers in 2000, and their Cameron County, Pennsylvania divorce case proceeded entirely by mail. According to the parties, Husband "paid for" Wife's divorce from [her first husband].

[Husband and Wife] were married on Monday, August 10, 2000, in Stonington, New London County, Connecticut. At the time, both parties believed that Wife was divorced from [her first husband]. Both Husband and Wife believed they were entering a valid marriage on August 10, 2000.

The parties lived together in New Jersey at the time of the marriage, and they lived in both New Jersey and Pennsylvania in 2016[,] due to Husband's relocation for work. In July 2017, the parties moved into the marital residence in Pennsylvania, where they lived together until January 2021.

Following their [August 2000] wedding, the parties lived together for more than twenty [] years as a married couple, they held themselves out to the public as being married, and they had four [] children together. The parties celebrated their wedding anniversary every year until 2020. The couple renewed their [wedding] vows in 2010 in New Jersey, at a "surprise ceremony" attended by Husband's family and the parties' children.

It was not until 2021[,] that either party learned that the Cameron County Court of Common Pleas had not formally entered the divorce decree for Wife's marriage to [her first husband] until Tuesday, August 11, 2000, which was one [] day after the parties' August 10, 2000[] wedding ceremony.

Husband testified that he was unaware of the one [] day overlap between the parties' marriage and Wife's divorce decree from [her

first husband] until Husband filed his initial answer and counterclaim [to Wife's divorce complaint] on March 16, 2021.[2]

Wife testified that she first learned of the one [] day issue from her attorney upon Husband's filing of his amended answer and counterclaim[ on] May 21, 2021.

According to Husband, Wife's earlier divorce decree was stored in a safe deposit box in the possession of Husband's father[.] Husband testified that the parties only accessed the divorce decree once [] when Wife applied for a passport in 2018[,] but that he did not notice the [August 11, 2000] date on the [divorce] decree at that time.

Trial Court Opinion, 1/24/25, at 2-4 (record citations, footnote, and extraneous capitalization omitted).

On October 17, 2022, Husband filed a complaint in annulment, asserting that, because Wife was still married at the time of Husband and Wife's wedding ceremony on August 10, 2000, his marriage to Wife was void under Connecticut law. Complaint in Annulment, 10/17/22, at ¶16. On November 7, 2022, Wife filed preliminary objections to Husband's complaint, asserting, *inter alia*, that "Connecticut law should not be applied to validate or invalidate the marriage, because Connecticut has no interest in the parties' instant divorce [or] annulment matter." Preliminary Objections, 11/7/22, at ¶16. Husband filed an answer to Wife's preliminary objections on November 29,

_____

[2] "Wife [] filed a divorce complaint in Bucks County[, Pennsylvania,] on March 5, 2021. Husband filed an answer and counterclaim on March 16, 2021, followed by an amended answer and counterclaim on May 21, 2021." Trial Court Opinion, 1/24/25, at 5 (record citations and extraneous capitalization omitted).

- 3 -

2022. On May 17, 2023, the trial court overruled Wife's preliminary objections. Trial Court Order, 5/17/23.

On June 6, 2023, Wife filed an answer and counterclaim to Husband's complaint. In her counterclaim, Wife requested, *inter alia*, equitable distribution of the marital property and alimony. Answer and Counterclaim, 6/6/23, at ¶¶5-10. Husband filed an answer to Wife's counterclaims on June 26, 2023.

On September 15, 2023, the trial court, upon Husband's request, appointed a master to conduct a hearing to resolve claims asserted by Husband in his complaint seeking a declaration of annulment. Trial Court Order, 9/15/23. On November 6, 2023, the master filed a report with the trial court recommending that Husband's request for a declaration of annulment be denied. Report of the Family Master, 11/6/23, at 9. The master found "that it would be inequitable and against public policy and policy of law to regard this marriage that was believed to be legal and entered into in good faith by both parties, when those parties continued to reside together as spouses for over two decades, as void." ***Id.***

On December 19, 2023, Husband filed exceptions to the master's recommendations. On January 18, 2024, the trial court entered an order memorializing the agreement reached by the parties that the issue of Husband's exceptions to the master's report would be decided based upon legal arguments presented by the parties and that no further record would be developed. Trial Court Order, 1/18/24. Thereafter, Husband filed a

memorandum of law in support of his exceptions on March 4, 2024, and Wife filed a memorandum of law in opposition to the exceptions that same day. On October 28, 2024, the trial court overruled Husband's exceptions to the master's report and dismissed the complaint for a declaration of annulment. This appeal followed.[3]

Husband raises the following issues for our review:

1. Whether the trial court committed an error of law and abused its discretion in dismissing [Husband's] complaint for [a declaration of] annulment in its legal conclusion[ and] application of Connecticut law and its policy?

2. Whether the trial court committed an error of law and abused its discretion in dismissing [Husband's] complaint for [a declaration of] annulment in the legal conclusion[ and] application of [] Pennsylvania law?

3. Whether the trial court committed an error of law and abused its discretion in relying on equitable principles to uphold a marriage that was void under Connecticut law?

Husband's Brief at 4.

Collectively, Husband's issues challenge the trial court's order that dismissed his complaint, which asserted that his marriage to Wife was void under Connecticut law and which, as a result, requested an annulment declaring the marriage void *ad initio*. Our standard of review of an order granting or denying a complaint requesting that a marriage be declared void or voidable is

---

[3] Both Husband and the trial court complied with Pennsylvania Rule of Appellant Procedure 1925.

limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court. The application of the law, however, is always subject to our plenary review.

*Asumana v. Asumana*, 318 A.3d 950, 953 (Pa. Super. 2024), *quoting **In re Est. of Carter***, 159 A.3d 970, 974 (Pa. Super. 2017).

At the outset, Husband's issues raise a choice-of-law question. Husband contends that the trial court erred in applying Pennsylvania law to validate his August 10, 2000 marriage to Wife on the basis that the parties continued to cohabitate as husband and wife after the impediment to their marriage, *i.e.*, Wife's still-existing marriage to her first husband, was removed. Husband's Brief at 13-17. Husband asserts that the trial court should have applied Connecticut law, which, according to Husband, dictates that the void nature of their marriage could not be cured by the subsequent resolution of the impediment. *Id.* at 10-13.

When presented with an issue involving a choice-of-law question, we are reminded that "[c]ourts conduct a choice-of-law analysis under the choice-of-law rules of the forum state," which in the case *sub judice* is Pennsylvania. ***Melmark, Inc. v. Schutt by and through Schutt***, 206 A.3d 1096, 1104 (Pa. 2019). "Pennsylvania courts first consider whether a 'true conflict' exists between the two states. This is because in some instances the purported conflict is ultimately revealed to be a 'false conflict' - meaning that the laws of both states would produce the same result, or that one of the

states has no meaningful policy-based interest in the issue raised." *Id.* (citations omitted).

Section 46b-40 of the Connecticut statute governing annulments states that "[a]n annulment shall be granted if the marriage is void or voidable under the laws of this state or of the state in which the marriage was performed." Conn.G.S.A. § 46b-40(b). While we can find no statute in Connecticut that expressly declares a marriage to be void by reason of bigamy,[4] Connecticut caselaw has long held that a bigamous marriage is prohibited by law and is void. *Mazzei v. Cantales*, 112 A.2d 205, 208 (Conn. 1955); *see also Perlstein v. Perlstein*, 217 A.2d 481, 483 (Conn. Super. Ct. 1966); *Parker v. Parker*, 270 A.2d 94, 95 (Conn. Super. Ct. 1970); *Vasquez v. Callardcastillo*, 2025 WL 1693388, at *1 (Conn. Super. Ct. filed Jun. 9, 2025) (unpublished opinion). Under Connecticut law, the void nature of a bigamous marriage cannot be cured by, *inter alia*, continued cohabitation, once the impediment to the marriage, *i.e.*, the first marriage, has been removed. *Parker*, 270 A.2d at 95-96 (stating that, "under [Connecticut law,] the cohabitation of the parties as spouses after the bar to the [one spouse's] remarriage had ceased does not validate their marriage").

_____

[4] The term "bigamy" was long-ago defined as "the state of a man who has two wives, or a woman who has two husbands[,] living at the same time." *Gise v. Commonwealth*, 81 Pa 428, 429 (Pa. 1876); *see also* BLACK'S LAW DICTIONARY 199 (11th ed. 2019) (defining "bigamy" as "[t]he act of marrying one person while legally married to another").

Like Connecticut, Pennsylvania courts have long-held that a bigamous marriage is void. *Kenley v. Kenley*, 2 Yeates 207, 1797 WL 717 (Pa. 1797); *see also Klaas v. Klaas*, 14 Pa.Super. 550, 553 (Pa. Super. 1900); *In re Watt's Est.*, 185 A.2d 781, 785 (Pa. 1962); *Campbell v. Tang*, 298 A.3d 1164, 1169 (Pa. Super. 2023). Section 3303 of the Pennsylvania Divorce Code states that "[i]n all cases where a supposed or alleged marriage has been contracted which is void or voidable under this title or under applicable law, either party to the supposed or alleged marriage may bring an action in annulment to have it declared void[.]" 23 Pa.C.S.A. § 3303(a). Unlike Connecticut statutory law, however, Pennsylvania statutory law provides a cure to an otherwise void marriage by reason of bigamy. Section 1702(a) of the Pennsylvania Marriage Law provides that

> If a married person, during the lifetime of the other person with whom the marriage is in force, enters into a subsequent marriage pursuant to the requirements of this part and the parties to the marriage live together thereafter as husband and wife, and the subsequent marriage was entered into by one or both of the parties in good faith in the full belief that the former spouse was dead or that the former marriage has been annulled or terminated by a divorce, or without knowledge of the former marriage, they shall, after the impediment to their marriage has been removed by the death of the other party to the former marriage or by annulment or divorce, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and immediately after the date of death or the date of the decree of annulment or divorce.

23 Pa.C.S.A. § 1702(a). This curative provision based upon cohabitation after the removal of the impediment finds further support in Section 3304(a) of the Divorce Code. *See Covington v. Covington*, 617 A.2d 1318, 1319

- 8 -

(Pa. Super. 1992) (stating, Section 3304(a) "simply assures that the putative spouse statute, [S]ection 1702, is read into the annulment section of the Divorce Code and is not nullified by it"). Section 3304(a)(1) states that

> Where there has been no confirmation by cohabitation following the removal of an impediment, the supposed or alleged marriage of a person shall be deemed void in the following cases:
>
> > (1) Where either party at the time of such marriage had an existing spouse and the former marriage had not been annulled nor had there been a divorce except where that party had obtained a decree of presumed death of the former spouse.

23 Pa.C.S.A. § 3304(a)(1).

When examining the results of Connecticut and Pennsylvania statutory laws regarding void marriages by reason of bigamy and annulments, we find there to be a true conflict. Both Connecticut and Pennsylvania caselaw deem a bigamous marriage to be void. Unlike Connecticut however, Pennsylvania statutory law provides a cure to a void marriage by reason of bigamy if the parties cohabitate after the removal of the impediment. In other words, Pennsylvania allows for a valid marriage to exist once the impediment is removed so long as the parties to the subsequent marriage cohabitate after the removal of the impediment. Connecticut does not allow for such a result.

Having found a "true conflict" of law, we now turn to a determination of "which state has a priority of interest in the application of its rule of law so as to vindicate the policy interests underlying that law." *Melmark*, 206 A.3d at

1107 (citation and original quotation marks omitted). Stated differently, this Court has previously held that

> In those cases involving conflicts between application of Pennsylvania law and the law of another state of the United States - that is to say, in cases that do not have an international dimension - Pennsylvania courts
>
>> take a flexible approach which permits analysis of the policies and interests underlying the particular issue before the court. This approach gives the state having the most interest in the question paramount control over the legal issues arising from a particular factual context, thereby allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome.

*Sinha v. Sinha*, 834 A.2d 600, 605 (Pa. Super. 2003) (citation omitted), *appeal denied*, 847 A.2d 1288 (Pa. 2004).

Upon review, we concur with the trial court's determination, "that Pennsylvania has a much more considerable interest than Connecticut on the question of the [validity of the marriage]." Trial Court Opinion, 1/24/25, at 15-16. As the trial court found, and the record demonstrates, the only connection the parties had to Connecticut was that their wedding ceremony occurred in Connecticut. *Id.* at 15; *see also* N.T., 11/6/23, at 7, 12 (stating that the wedding ceremony took place in Connecticut). At the time of their marriage, Husband and Wife resided in New Jersey and travelled to Connecticut for their marriage ceremony. N.T., 11/6/23, at 8, 12. Both Husband and Wife currently reside in Pennsylvania, and they have resided in

Pennsylvania since July 2017.[5]  Complaint in Annulment, 10/17/22, at ¶¶1, 2; *see also* Answer and Counterclaim to Complaint in Annulment, 6/6/23, at ¶¶1, 2 (admitting as true the averments contained in paragraphs 1 and 2 of the complaint); N.T., 11/6/23, at 6, 47.  Therefore, we discern no error of law or abuse of discretion in the trial court's application of Pennsylvania law.

As discussed *supra*, Section 1702(a) of the Pennsylvania Divorce Code provides a curative provision under which an otherwise void marriage by reason of bigamy can be rehabilitated upon removal of the impediment if the parties cohabitate as a married couple after the removal of the impediment. 23 Pa.C.S.A. § 1702(a).  As this Court in **Covington**, **supra**, explained, "[t]he single controlling factor pursuant to [S]ections 1702 and 3304(a) that needs to be clear from the record, once a good faith ceremonial marriage is established, is continued cohabitation in good faith after the removal of the impediment of the prior marriage." **Covington**, 617 A.2d at 1319-1320; **see also Est. of Sacchetti v. Sacchetti**, 128 A.3d 273, 285 (Pa. Super. 2015) (reiterating that, evidence of cohabitation must be established to rehabilitate a marriage under Section 1702(a)), *appeal denied*, 145 A.3d 728 (Pa. 2016).

In dismissing Husband's complaint for a declaration of annulment, the trial court found that

---

[5] Husband testified that he moved to Pennsylvania in July 2016.  N.T., 11/6/23, at 6.  Wife stated that she moved to Pennsylvania to be with Husband in July 2017.  **Id.** at 47.

the parties undoubtedly reside in Pennsylvania. Both Husband and Wife testified before the [master] that they believed Wife was divorced at the time of their marriage and that they were entering a valid marriage on August 10, 2000. Under Pennsylvania law, there is no dispute that the parties' cohabitation and conduct as husband and wife in the decades after the issuance of [Wife's] divorce decree [from her first husband] (one day after the parties' wedding celebration), rehabilitated their marriage. This, paired with Pennsylvania's strong presumption[] in favor of the validity of a second marriage where the parties entered into it innocently, support[s] upholding the validity of the parties' marriage.

Trial Court Opinion, 1/24/25, at 17-18 (record citations omitted).

Upon review, we concur with, and the record supports, the trial court's order dismissing Husband's complaint for a declaration of annulment. Neither Husband nor Wife dispute that they were married in Connecticut on August 10, 2000. N.T., 11/6/23, at 7, 12; **see also** Complaint for Annulment, 10/17/22, at Exhibit A (demonstrating a valid marriage certificate issued by Connecticut). It is well-established that, "[a] marriage which satisfies the requirements of the state where the marriage was contracted will everywhere be recognized as valid unless it violates the strong public policy of another state[.]" **In re Lenherr's Est.**, 314 A.2d 255, 258 (Pa. 1974); **see also Neyman v. Buckley**, 153 A.3d 1010, 1018 (Pa. Super. 2016). At the time of their August 10, 2000 marriage, Husband and Wife believed that Wife was divorced from her first husband. N.T., 11/6/23, at 19, 40-41. Therefore, a "good faith ceremonial marriage" was established. **See Covington**, 617 A.2d at 1320.

After their August 10, 2000 marriage, Husband and Wife lived together as a married couple, first in New Jersey and then in Pennsylvania, and raised

four biological children together. N.T., 11/6/23, at 8-10, 12, 47-48. In 2010 the couple renewed their wedding vows in a "surprise ceremony" hosted by Husband's family, and the couple celebrated their wedding anniversary every year from 2001 to 2020. *Id.* at 43-45. Wife acknowledged that during their marriage, Husband and Wife experienced periods of separation due to marital discord. *Id.* at 34. Ultimately, however, the couple reconciled and resided together in Pennsylvania from July 2017, until Husband moved out of the marital residence on January 17, 2021. *Id.* at 46. Wife filed for divorce from Husband in March 2021.

It was only during the pendency of Wife's divorce action against Husband that Husband and Wife learned that Wife's divorce from her first husband was not finalized until August 11, 2000, one day after their marriage ceremony. *Id.* at 15, at 42-43. It was at this point, August 11, 2000, that the impediment to Husband and Wife's marriage was removed. After the removal of the impediment, Husband and Wife lived together and raised a family as a married couple. Therefore, pursuant to Section 1702(a), their marriage was rehabilitated and their marriage became valid on August 11, 2000. *See Covington*, 617 A.2d at 1320 (stating that the couple were legally married on the date the decree was entered divorcing the husband from his previous wife). As such, we discern no error of law or abuse of discretion in the trial court's order dismissing Husband's complaint for a declaration of annulment.

Order affirmed.

- 13 -

Judge Dubow joins this Opinion.

Judge Beck joins this Opinion and files a Concurring Opinion.


Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/16/2025